## GILLELAND & DILLINGHAM *v.* LOUISVILLE AND NASHVILLE RAILROAD COMPANY.

1. A declaration sounding in tort, seeking to recover from the defendant as a common carrier for the breach of its duty to furnish a suitable car for the transportation of live stock, can not be amended by setting up as the basis of recovery a special contract between the parties for the equipment of the car.

2. The admission of immaterial evidence will not be held cause for a new trial unless shown to have been harmful to the complaining party.

3. The undisputed evidence showed that a contract for the shipment of live stock was entered into between the plaintiffs and the defendant; that one of the plaintiffs, acting for his firm, objected to the car furnished by the defendant and refused to allow the stock to be shipped in it under the terms of the contract; that the stock were unloaded from this car, but were afterwards reloaded on it and shipped to their destination; that tho plaintiff, who was accompanying the stock, knew, or had opportunity to ascertain,

that they were being transported on the car to which he had objected; that while en route with the stock he reaffirmed the contract, claiming and accepting a benefit under it; and that the stock were injured in transit by reason of the omission of precautions which, under the contract, devolved upon the plaintiffs. *Held,* that there could be no legal recovery, and that it was not error to direct a verdict for the defendant.

Argued March 9, — Decided March 29, 1904.

Action for damages.   Before Judge Reid.   City court of Atlanta.   June 20, 1904.

*Culberson, Willingham & Johnson,* for plaintiffs.

*King, Spalding & Little,* for defendant.

CANDLER, J. This was an action against a railroad company for damages to a shipment of horses, the negligence alleged being that the defendant " put and shipped said horses in a car which was wholly unfit and defectively equipped for the shipment of horses." The court directed a verdict for the defendant. To this ruling, to the refusal· to allow an amendment to the declaration, and to the admission and rejection of certain evidence the plaintiffs except.

1. The original declaration sounded in tort, and sought to recover on the defendant's common-law liability as a carrier for failing to provide a suitable car for the transportation of the live stock. The amendment which was rejected set up that " the defendant railroad company made a special charge of two dollars against these plaintiffs, for fitting and equipping said car, over and above its regular charge for carrying the horses." The effect of this amendment would have been to change the suit from an action in tort to one for damages for breach of a special contract for the equipment of the car. It was properly refused by the court. *Cox* v. *Richmond R. Co.,* 87 *Ga.* 747.

2. We find no error in the admission of evidence as to the conductor's record concerning the condition of the stock in transit, or as to the rules and regulations of the defendant company. Even if this testimony was not technically relevant, it was not of sufficient materiality to injuriously affect the plaintiffs' rights, and its admission will not be held ground for a new trial. For reasons which will more fully appear in the next division of this opinion, we hold that it was not error to refuse to allow a witness to "testify that there was not the depth and quantity of sawdust bedding in the car that the defendant's witnesses had sworn there was."

3. The horses were shipped from Shelbyville, Kentucky, to Atlanta, under a special contract of affreightment between the plaintiffs and the defendant, the consideration of which, flowing to the plaintiffs, was the grant of a greatly reduced rate of freight, and free transportation to the shipper between the two points named. This contract recited that "the shipper has examined and found in good order and condition the car or cars provided by said carrier for the transportation of said animals, and hereby accepts the same and agrees that they are, as thus provided, suitable and sufficent for said purpose; and said shipper will at his own expense provide such bedding or other suitable appliances in said car or cars as will enable said animals to stand securely on their feet while in the same." According to the testimony of Dillingham, one of the plaintiffs, who looked after the loading and shipment of the stock in Shelbyville, and who executed the contract on behalf of his firm, the contract was signed by him before he had an opportunity to examine the car in which the stock were to be shipped. When he saw the car he objected to it, and refused to allow the stock to be shipped in it except at the carrier's risk. The agent of the railroad company "said he would try to fix it so they would go through all right," and the horses were turned out of the car, presumably for the purpose of either putting the car in a condition satisfactory to Dillingham or of loading them on another car. Dillingham saw the stock no more until just before he left Shelbyville, when they were in the same car they had been in before, and that car was in the train on which he was to ride. He had no opportunity then to examine the car. His journey took him first from Shelbyville to Louisville. After leaving Shelbyville he ascertained that there was a mistake in the pass that had been given him to permit of his accompanying the stock. He testified: "When I got down to Louisville I found I didn't have any pass. I then went to the Louisville & Nashville Railroad, showed them the contract, told them I had some stock, showed them the pass was not right, and they corrected it and gave me a pass to Nashville." How long he remained in Louisville before continuing his journey to Atlanta does not definitely appear, but the witness swore that from the time he left Shelbyville until he reached Atlanta he had no opportunity to examine the stock or ascertain the condition of the car in which they were

loaded.    Upon arriving in Atlanta the stock were damaged as set out in the petition, and it was then discovered that the floor of the car was not so prepared as to give the animals a proper foothold.

The court did right to direct a verdict for the defendant, as under the evidence there could have been no legal recovery by the plaintiffs.    There is no contention that the injuries sustained by the horses were occasioned in any other way than through the failure to have upon the floor of the car bedding or slatting of such a character as to give them a firm foothold and enable them to stand securely ; and by the terms of the contract into which the plaintiffs entered, the equipment of the floor of the car for this purpose was a task which devolved entirely upon them.    But it is contended that when Dillingham ordered that the horses be taken out of the car in Shelbyville, and declined to let them be shipped in a car in the condition in which it was, the contract was annulled, and from that moment the common-law relation of carrier and shipper existed between the parties.    While it is true, according to Dillingham's testimony, that he refused to agree that the stock should be shipped in the car in which it was at first loaded, except at the railroad's risk, he himself makes it equally clear that before leaving Shelbyville he saw that they had been reloaded in the same car ; and that upon arriving in Louisville, far from repudiating the contract, he reaffirmed it by demanding, upon the strength of it, that the mistake in his pass be corrected, and that he be given free transportation to Nashville in accordance with its terms.    The contract was reasonable, and was supported by an ample consideration, to wit, the reduction of the rate of freight by one half.    See, in this connection, *Central R. Co.* v. *Glascock*, 117 *Ga.* 938.    Having thus ratified it and accepted a benefit under it, he must stand by its provisions.    As before stated, it is not disputed that the injuries sustained by the stock were due to the failure to so prepare the floor of the car as to enable them to stand securely while the train was in motion.    That was a duty which, under the contract, devolved upon the plaintiffs ; and it follows that they can not recover from the railroad company for the damage done.

> *Judgment affirmed.    All the Justices concur.*