## YOUNG *v.* CENTRAL OF GEORGIA RAILWAY CO.

To "mutilate" a railroad ticket, within the reasonable meaning of a stipulation on its face that it shall not be good for passage if mutilated in any way, it must be deprived of some essential or material part ; and such a ticket is valid, although torn in two pieces, when both pieces are presented to the conductor at the same time, and it is apparent that they are parts of the same ticket, that together they form the entire ticket, and that no fraud has been perpetrated upon the railroad company.

Argued April 8, — Decided May 11, 1904.

Action for damages.  Before Judge Norwood.  City court of Savannah.  April 20, 1903.

See, cited by counsel, Hutch. Car. §§ 577–580; 110 *Ga.* 665, 686; 115 *Ga.* 1015; Civil Code, § 2267; Hale, Bailm. & Car. 439; 12 Wall. 65.

*Travis & Edwards*, for plaintiff.
*Lawton & Cunningham*, for defendant.

CANDLER, J.  This was an action for damages for the alleged tortious eviction of the plaintiff from the defendant's train.  The jury found for the defendant, and the plaintiff excepts to the overruling of her motion for a new trial.  It appears that the plaintiff purchased in Augusta, at a greatly reduced price, a ticket over the defendant's line of railroad from Augusta to Savannah and return. This ticket contained a printed stipulation to the effect that if it

should become mutilated in any way it should not be good for passage. On the return trip, when the plaintiff tendered the ticket to the conductor, it was torn into two parts. The evidence for the plaintiff was to the effect that she presented both pieces of the ticket, and that they corresponded in such a way, as to the numbering and other physical characteristics of each, that there could be no doubt that they were parts of the same ticket, and that together they formed the entire return ticket. Witnesses for the defendant, on the other hand, testified that the plaintiff tendered the conductor only a part of the torn ticket. Be that as it may, the conductor demanded the payment of fare by the plaintiff, which was refused, and she was evicted from the train. The court charged the jury as a matter of law that the ticket was mutilated and by its terms invalid, and restricted their consideration of the case to the question whether the plaintiff was evicted from the train at a proper place. This was error. Only by the most narrow and literal construction of the word "mutilated," as contained in the stipulations on the face of the ticket, could the charge be justified. The writer has never favored laxity in the enforcement of agreements between railroad companies and those to whom special rates or gratuities are granted (*Central R. Co.* v. *Glascock,* 117 *Ga.* 938; *Gilleland* v. *Louisville R. Co.,* 119 *Ga.* 789; *Holly* v. *Southern R. Co.,* 119 *Ga.* 767); but he is equally opposed to a construction so strict as to do violence to the obvious intention of the agreement and work a hardship on the party sought to be bound. The definition given by the Standard Dictionary of the word "mutilate" is as follows: "To cut off or deprive of a limb or essential part of, as an animal body; maim; cut or break off, or otherwise remove any part of, as a statue; disfigure. To retrench, remove, expunge, or delete an essential or material part of, so as to render incomplete or imperfect, as a literary composition; as, to mutilate a speech." The main idea of this definition is the *removal* of an *essential* part, so that the whole is rendered imperfect. It is plain that if a ticket has been torn in two, and the two parts, preserved, fit exactly together in such a way as to make it indisputable that they are parts of the same ticket and together form the entire ticket, there has been no mutilation except in a purely physical sense. Nothing essential to a valid ticket has been removed — only its physical symmetry has

been marred. The only reasonable object to be accomplished by a regulation like the one now under consideration is to prevent fraud. It would, of course, be grossly unfair to the railroad company to require it to honor only a part of a ticket; for in that case two or more persons, only one of whom had paid any consideration to the company, might be enabled to ride on the same ticket. But if the plaintiff's evidence is to be believed, she furnished to the conductor of the train conclusive evidence that a fraud had not and could not have been perpetrated by her. As to this point there was, as stated before, a conflict in the evidence; but the jury should have been allowed to pass upon the contested issue, and to say whether the plaintiff presented to the conductor in good faith an entire ticket which had, as she claimed, been accidentally torn in two, or only a part of a mutilated ticket.

In the case of Wightman *v.* Chicago R. Co., 73 Wis. 169, 2 L. R. A. 185, 40 N. W. 689, it was held: "A round-trip ticket having the words 'Not good for passage' on the going part of the ticket, and the words 'if detached' on the returning part, is valid when both parts are presented together at the same time, to the same conductor on the going trip, although the parts have become separated by inadvertence." It is contended, however, by counsel for the defendant in error, that this case turned on a special statute, and is therefore not applicable to the case at bar. While it is true that in the opinion reference is had to a Wisconsin statute and it is held that the company is not authorized, "under the guise of regulations, to abridge or impair a passenger's statutory or legal rights," it does not appear that the statute in question related in any way to the question of the mutilation or detachment or tearing of tickets or parts of tickets. On the contrary, it affirmatively appears in the opinion of Cassoday, J., that the statute referred to "required the defendant, upon application 'at its ticket station' . . and payment of the price, to sell to the plaintiff 'round-trip tickets, good for first-class passengers'" between certain points mentioned. There is certainly nothing in such a statute that would alter the general rule involved or render any the less applicable to the case now under consideration the principles announced in the case cited. Under the rule laid down by this court in the case of *Georgia R. Co.* v. *Clarke*, 97 *Ga.* 706, a stipulation in a special contract embodied in a railroad ticket should,

in a case of uncertainty, be construed most strongly against the railroad company. In the present case the court gave the most rigid construction possible in the company's favor. The case, we think, was tried on the wrong theory; and we are therefore constrained to send it back for another hearing.

*Judgment reversed. All the Justices concur.*