LEWIS *v.* THE WESTERN & ATLANTIC RAILROAD CO.

There being no evidence that the plaintiff, in ordering his ticket, communicated to the agent who sold it that a ticket was wanted different from that which he received, and that ticket having expired by its own limitation, according to its face, before he took the train from which he was expelled, there was no error in granting a nonsuit.                                   *Judgment affirmed.*

November 6, 1893.

Action for damages. Before Judge WESTMORELAND. City court of Atlanta. May term, 1893.

The plaintiff purchased a ticket at Birmingham, Alabama, to Atlanta, via Chattanooga, over the Q. & C. and defendant's lines, of the ticket agent at the depot at Birmingham, just before taking the train for Chattanooga, between two and three o'clock A. M. on February 1, 1892. Plaintiff just asked for a ticket which he knew was a one day limit ticket. He had bought and used similar tickets many times before. He left Chattanooga for Atlanta on February 2, 1892, via defendant's road, between twelve o'clock M. and one o'clock P. M. of that day. The conductor came to him to collect fares, and he handed him the ticket above mentioned, which the conductor looked at and returned, saying it was not

v 93-15

good as the limit had expired the day before, and telling plaintiff he would have to pay cash fare if he wanted to ride to the point the ticket read. Plaintiff then told him the ticket was all he had to offer, that he bought the ticket in good faith, expecting a one day limit on the same, having bought and used the same form of ticket before, and if the selling agent had made a mistake it was not his (plaintiff's) fault, and that in order to protect himself he must ask the conductor to accept it. The conductor refused to accept it, but said he would see plaintiff later. When the train neared Dalton he came to plaintiff and asked for the ticket, saying he would wire for instructions on the same. Plaintiff handed him the ticket and the conductor left him. When the train was approaching Cartersville the conductor came to him and asked if he had been sick the night before, and incapable of journeying on the last train to Atlanta on the evening of February 1st. Plaintiff replied, he had contracted a very bad cold, and not knowing the mistake on the ticket, took some medicine to help his cold, and went to bed early to get the benefit of much needed rest and to help his cold. The conductor then asked if it would have resulted seriously with him if he had taken that train; plaintiff replied, no, he did not think it would have killed him. The conductor then handed him back the ticket, with the remark that under the circumstances he must return it and collect cash fare or ask plaintiff to leave the train. Plaintiff received the ticket and told the conductor he would not leave the train of his own free will. At Cartersville the conductor told him he must get off, and he replied he would not do it. The conductor then said, "You surely do not intend to create a disturbance and cause me trouble." Plaintiff replied, no, if the conductor would take his baggage and assist him by the arm, he would go with the conductor. As the conductor was

putting him off, he asked two gentlemen to step to the platform and witness the ejectment, which they did. The conductor put him off on the platform, bag and baggage. Plaintiff then said, " Am I off?" and the conductor told him he was. Plaintiff then spoke to the two gentlemen, in the conductor's presence, asking them if they heard and witnessed what was said and passed, and they answered, yes. Plaintiff then turned to the conductor and told him if he would hold the train plaintiff would purchase a ticket to Atlanta, but the conductor refused to do this, saying if plaintiff got on that train he would have to pay full cash fare from Chattanooga to Atlanta. The conductor then gave the signal for the train to pull out, and stepped aboard. Plaintiff also stepped on board and took a seat. When the conductor came to collect fares he demanded of plaintiff full cash fare from Chattanooga to Atlanta. Plaintiff said that having gotten on the train at Cartersville bound for Atlanta he would pay cash fare from Cartersville to Atlanta, provided the conductor gave him a receipt for his money, saying where fare was paid from and to. The conductor said he would not take fare less than from Chattanooga to Atlanta. Plaintiff then stated his view of the matter, offered the amount of fare from Cartersville to Atlanta, and told the conductor if he rejected it, plaintiff would use all means in his power to resist an ejectment. The conductor then took the money and gave him a cash fare receipt for the same. The coach was nearly full of passengers who heard and witnessed what was said and done, and the people at the depot at Cartersville heard and witnessed much that was said and done. Plaintiff arrived at Chattanooga between eight and nine o'clock A. M., February 1, 1892. He testified that he thought the difference in price between a limited and unlimited ticket, between the points in question over the route he took, was about $2.75 or $3.00 ; was

not sure whether they sold continuous unlimited tickets from Birmingham to Atlanta via Chattanooga over these roads at that time; and could not give the exact hour when trains over defendant's road left Chattanooga for Atlanta, but there were many freight and passenger-trains running. The ticket stated, among other things, that it was subject to the stop-over regulations of the lines over which it read; that it was good until used unless limited by stamp or written indorsement, or cancelled by punch in the margin, and if limited as to time, would be void after midnight of date cancelled by "L" punch in the margin. On the back was stamped "Union Depot B. Feb. 1, 1892. Birmingham, Ala." And the date February 1, 1892, appears cancelled in the margin.

R. J. JORDAN, for plaintiff.

PAYNE & TYE, for defendant.