## CENTRAL OF GEORGIA RAILWAY COMPANY *v.* GLASCOCK & WARFIELD.

1. In a suit for damages against a railroad for injury to live stock shipped over the defendant's line, where it appears that by a special contract signed by the plaintiffs as well as the agent of the railroad company, the consideration of which was the grant of a reduced freight rate on the shipment, the plaintiffs agreed that the defendant should be liable only as a private carrier for hire, it was error for the court to charge that the railroad company was bound to the exercise of extraordinary diligence.

2. Where, by the contract referred to, it was agreed that in the event of damage to the stock, for which the railroad company might be liable, the amount claimed should be limited to a certain amount for each of the animals shipped, it was error for the court to charge the jury, without qualification, that if they found the defendant liable, the measure of damages for the horses killed would be the market value of the horses.

*Argued March 18, — Decided April 8, 1903.*

Action for damages.    Before Judge Nottingham.    City court of Macon.    April 19, 1902.

*Hall & Wimberly, J. E. Hall,* and *R. D. Feagin,* for plaintiff in error.    *R. L. Ryals* and *T. J. Felder,* contra.

CANDLER, J.    This was a suit for damages on account of injuries to certain live stock, alleged to have been sustained while the stock were being shipped over the defendant's line of railroad from Atlanta to Macon.    The jury returned a verdict in favor of the plaintiffs; the defendant made a motion for a new trial, which was overruled, and it excepted.    It appears that the shipment was made from a point in Kentucky, and was in pursuance of a written contract of carriage, signed by the plaintiffs and by the agent of the initial carrier.    This contract recited as its consideration the grant to the shippers of a reduced rate of freight, and provided, among other things, that the liability of the railroad company should be " only that of a private carrier for hire," and should cease at the station to which the shipment was destined; that in case of damage for which the carrier should be liable, the amount to be claimed should be limited to specified sums varying according to the different kinds of animals enumerated; and that " as a condition precedent to the shipper's right to recover any damages for loss or injury to said animals, he will give notice in writing of his claim thereof to the agent of the railroad company, or other carrier, from whom he receives said animals, before said animals are removed

from the place of destination above mentioned, or from the place of delivery of the same to said shipper, and before said animals are mingled with other animals." The contract also provided that in the absence of an agreement to the contrary, its stipulations should constitute a contract between the plaintiffs and every other carrier over whose line the shipment should pass to its destination.

1. The following portion of the charge of the court is assigned as error: "If the plaintiffs' stock were damaged while in defendant's possession, by being transported and delivered, as alleged, and it does not appear that they exercised extraordinary diligence in the care and transporting of that property, then the plaintiffs would be entitled to have a verdict at your hands." In view of the special contract of affreightment between the parties, which was signed by the plaintiffs as well as the agent of the railroad company, the charge excepted to was erroneous. It is well settled that " carriers of live stock may limit their liability by a special contract, which will be enforced, if based upon a sufficient consideration, and if not unreasonable, immoral, or contrary to public policy." *Cooper* v. *Raleigh R. Co.*, 110 *Ga.* 662, and cases cited. The consideration of the contract in the present case, viz., the grant of a greatly reduced rate of freight, was valid, reasonable, and sufficient to support its stipulations. By the terms of that contract, the liability of the railroad company was limited to that of a private carrier for hire, the measure of whose duty is ordinary diligence. See Hutch. Car. (2d ed.) § 37. It follows that the charge of the court to which we have referred placed on the defendant company a burden greater than that imposed by its contract, and was error clearly prejudicial to its rights.

2. The motion for a new trial also complains that the court below erred in the following charge : "If the plaintiffs are entitled to recover for the horse alleged to have died, they would be entitled to recover the value of that horse,— the market value of him. If they are entitled to recover for the horse alleged to have died two or three days after reaching Macon, then they would be entitled to recover the market value of that horse." The fault to be found with this charge, as with the one with which we have previously dealt, is that it entirely disregards the effect upon the plaintiffs' right to recover of their special contract of affreightment with the defendant. In another portion of his charge the court very

properly left it to the jury to determine whether that paragraph of the contract which limited the amount to be claimed in case of damage due to the negligence of the defendant was an agreement between the parties as to the value of the stock or an arbitrary estimate of damages, instructing them that in the latter event the plaintiffs would not be bound by that stipulation, while in the former they would. See *Southern Ry. Co.* v. *Horner*, 115 *Ga.* 381 (2), and case cited. The jury, then, were authorized to find that the plaintiffs were limited in their recovery to the amounts specified in the contract; and to give the additional charge, that in the event they found the defendant liable they would be compelled to measure the damage for the horse killed by the market value of the animal, set up a possibly erroneous measure of damages, and necessarily tended to confuse the jury as to the amount they were entitled to find for the plaintiffs.

The motion for a new trial contains numerous other grounds, some of which are without merit, and some of which show error on the part of the trial court, but not of sufficient materiality to require a reversal of the judgment overruling the motion. The errors pointed out in the foregoing, however, manifestly require that the case should be tried again, in accordance with the principles herein laid down. *Judgment reversed. By five Justices.*