## TRUITT-SILVEY HAT CO. *v.* CALLAWAY & TRUITT.

1. The petition was not open to attack by general demurrer.
2. One having the capacity and opportunity to read a written contract,. and who signs it, not under any emergency, and whose signature is not, obtained by any trick or artifice of the other party, can not afterwards: set up fraud in the procurement of his signature to the instrument.
3. Where one brings an action to recover a certain portion of a fund in the hands of the defendant, and the latter in his plea defends on the ground that the fund is the proceeds of a contract with a third party,. and that this contract was procured by means of certain fraudulent representations made to such third party at and before the execution

of the contract, the defendant, in order to make such a defense complete and effective, should distinctly allege that both parties to the suit are in fault, and have been guilty of fraud as against such third party.

4. When, after the dissolution of a partnership consisting of two members, one of the former partners executes a contract in the name of the partnership, intended to benefit both of the former partners, the partner who did not join in its execution is bound thereby, if he afterwards performs acts which amount to a ratification of the terms of the instrument.

Argued November 19, 1907.—Decided May 14, 1908.

Action on contract. Before Judge Pendleton. Fulton superior court. January 25, 1907.

The petition alleged substantially as follows: The plaintiffs, a partnership composed of E. C. Callaway and Alfred Truitt, under the firm name of Callaway & Truitt, were formerly engaged in the business of selling hats, but on October 10, 1902, were succeeded in business by the defendant, the Truitt-Silvey Hat Company, a corporation, which bought the stock of goods, fixtures, etc., of Callaway & Truitt, the latter retaining only their bills and accounts receivable. At the time of the change in business Callaway & Truitt were carrying a bond of indemnity or policy of insurance in the American Credit Indemnity Company, against loss by the insolvency of their customers. This bond expired in due course on October 31, 1902. This policy of insurance was transferred by Callaway & Truitt to the Truitt-Silvey Hat Company, thereby protecting the losses of Callaway & Truitt up to October 10, 1902, and of the Truitt-Silvey Hat Company from October 10, 1902, to December 31, 1902, the date of the expiration of the contract. About December 31, 1902, the Truitt-Silvey Hat Company took out an additional bond of indemnity with the same indemnity company, to run until December 31, 1903, which bond was made subject to the conditions of the bond transferred to them by Callaway & Truitt. Contemporaneously with the taking out of this additional bond of indemnity, the Truitt-Silvey Hat Company entered into a contract with Callaway & Truitt, touching the credit insurance under both these bonds, a copy of which contract is attached to the petition. This contract reads as follows: "Whereas Callaway & Truitt, a partnership formerly doing business in the City of Atlanta, was, on the tenth day of October 1902, succeeded by the Truitt-Silvey Hat Co., and whereas, at the time of said change, said

Callaway & Truitt held a bond of indemnity of the American Credit Indemnity Company, No. 19,386, which expired December 31, 1902, which, by appropriate riders, was duly transferred by the Company to the Truitt-Silvey Hat Company, and whereas the Truitt-Silvey Hat Company has taken out an additional bond of indemnity from the American Credit Indemnity Company, No. 24,381, which expires December 31, 1903, with a rider thereto attached providing that all covered losses accruing after December 31, 1902, on sales, shipments, and deliveries made since January 1, 1902, may be proven under said bond 24,381, but subject to conditions of bond No. 19,386, therein fully stated; and whereas the said firm of Callaway & Truitt is interested in losses on sales, shipments, and deliveries occurring prior to October 10, 1902, which may be recovered under said policy 24,381, it is now therefore agreed between said Callaway & Truitt, a partnership composed of E. C. Callaway and Alfred Truitt, parties of the first part, and the Truitt-Silvey Hat Company, a corporation of said county, parties of the second part, as follows: First: The initial losses required under said policies for the year 1902 shall be borne by the parties hereto on the basis of a pro rata of the sales of the respective parties herein, made during the year 1902. Second: The initial losses provided for under said policies for the year 1903 shall be borne by the Truitt-Silvey Hat Company and the said Callaway & Truitt in that proportion which the gross sales of the former for the year 1903 bear to the amount of notes and accounts of the latter remaining unpaid on the first day of January, 1903, which are covered by said indemnity bond, excluding all said notes and accounts on which claims have heretofore been made under said bond of indemnity. Third: The losses paid on sales, shipments, and deliveries prior to October 10, 1902, shall be accounted for to said Callaway and Truitt, whether same be collected under policy 19,-386 or policy 24,381, and the losses paid on sales, shipments, and deliveries made since October 10, 1902, shall be retained by said Truitt-Silvey Hat Company, except sales of samples and such merchandise as was retained by Callaway and Truitt and sold by them since October 10, 1902, and any losses collected from said Indemnity Company on such sales shall be accounted for to Callaway and Truitt. Fourth: The premiums on said bond of indemnity shall be apportioned as follows: For 1902, in proportion to the gross

sales of the parties hereto during the year 1902, which are covered by said bond. For 1903, on the same proportion as that fixed in the second paragraph above for apportionment of initial losses for 1903. In testimony whereof, the parties hereto have executed this agreement in duplicate, this the 31st day of December 1902. [Signed] Callaway and Truitt. Truitt-Silvey Hat Company, per Jerome Silvey, V. P." The petition alleged that the defendant collected from the Indemnity Company, under the bonds referred to, certain sums to which, under this contract, the plaintiffs were entitled, and to recover which this suit was brought. A general demurrer to the petition was overruled, and certain special demurrers to the defendant's plea were sustained; and on the trial the court directed a verdict for the amount sued for. To each of these· rulings the defendant excepted.

*Payne, Jones & Jones,* for plaintiff in error.

*Smith, Hammond & Smith,* contra.

BECK, J. (After stating the facts.)

1. The court did not err in overruling the defendant's general demurrer and in refusing to dismiss the case. Paragraph 7 of the petition was as follows: "Contemporaneously with the extension of said credit insurance as aforesaid, defendant entered into a written contract with plaintiffs touching the credit insurance under both of said bonds of indemnity, said contract being dated Dec. 31, 1902, and a true copy thereof hereto attached and made part of this petition, marked Exhibit A." Upon general demurrer to the petition it might be assumed that the authority to execute the contract referred to did exist, and that the contract. was valid. . If the defendant had desired more precise informa-- tion as to which one of the partners executed said contract, and as.· to the circumstances showing authority for the execution of the same, such information should have been called for by a special. demurrer, and not by a general demurrer, which, if sustained,. would have had the effect to dismiss the plaintiffs' case.

2. The portions of the defendant's plea which set up the defense that the contract referred to above was, as against the Truitt-Silvey Hat Company, procured by fraud, were clearly demurrable. The pleader did not set forth any sufficient reason why the· officer of the corporation, executing the contract, was not fully ac-- quainted with all the terms, provisions, and conditions of the con-

tract which he executed on behalf of the company that he represented at the time of entering into the contract. The plea does
not set forth a single fact tending to show fraud, legal or moral,
as against the company represented by him, or any mistake against
which he could or should be relieved in the enforcement of the
contract.

3. The court also properly struck those parts of the plea which
embodied the contention, "that the contract, the basis of this suit,"
—to state the contention in the language of counsel for the plaintiff in error,—"being a contract whereby Callaway & Truitt were
enabled to perpetrate said fraud upon said insurance company,
and further being a contract for a division of the funds, the
proceeds of said fraud were thereby so tainted with fraud that no
cause of action could legally accrue therefrom." In substance
the contention of the plaintiff in error is, that as a defense against
the plaintiffs' demand for a division of the funds received from
the indemnity company, under the policies specified in the pleadings, the defendant was entitled to invoke the application of the
maxim, in pari delicto potior est conditio defendentis. The defendant's position, however, as set forth in its pleadings, did not
authorize the application in its favor of the doctrine embodied in
that maxim. Before one would be entitled to a favorable application of the maxim *in pari delicto,* the fault, or fraud, or corruption of both the party seeking to obtain and the party resisting
must appear. He who invokes the application of that maxim, to
retain the possession of tainted funds, must not only charge iniquity, but must confess iniquity. He must show that the hands
which seek to hold are unclean, as well as the hands which seek
to take. The defendant in this case does not plead that it is in
possession of unclean money. The statement in its pleadings may
squint that way, but it nowhere distinctly alleges or sets up facts
showing that the funds, of which the plaintiffs demand a part,
are the proceeds of any scheme or contract which is fraudulent in
its nature, so far as relates to the defendant. The defendant does
not contend that the funds in controversy which it holds, and of
which the plaintiffs sought a division, were procured from a third
party by means of any fraud practised by the defendant and the
plaintiffs conjointly. If the defendant had desired to hold the
funds on the ground that they were the proceeds of a fraud prac-

ticed upon the indemnity company, and, therefore, so tainted with fraud that a court would not touch them, but would leave them where found, there should have been, in the defendant's pleadings, allegations of its own fraud, as well as of the fraud of the plaintiffs, the defendants in error here. See, in this connection, Broom's Legal Maxims, 551.

4. Whether the contract in this case was of such a nature that one partner might have executed it, so as to make it binding and valid, without the consent of the other, on the ground that it was within the power of either partner, after a dissolution, to execute a contract which had for its purpose the protection of the assets of the old firm, it is not necessary to decide; because, even if it was such a contract that it would not have been binding unless executed with the consent of both or unless it received subsequently the ratification of the partner who did not join in the execution, the uncontradicted evidence in the case shows that both partners, Callaway and Truitt, subsequently to its execution, recognized the contract as a valid, subsisting contract, and performed acts which amounted to a ratification of its terms. The purpose of the contract was to secure for the firm and both of the partners the protection of the bonds or policies of indemnity mentioned therein, taken out both before and after the dissolution of the firm; and both partners participated in a settlement with the indemnity company, which resulted in the paying over to the plaintiff in error of funds arising under the conditions of those policies. Upon the trial E. C. Callaway, formerly of the firm of Callaway & Truitt, in part testified as follows: "As to who conducted the adjustment with the insurance company for the two concerns of Callaway & Truitt and the Silvey Hat Company: when the agent came around to make the settlement, I was 'phoned for, to come over to the place of business of the Truitt-Silvey Hat Company, to negotiate for the former firm of Callaway & Truitt, and Mr. Truitt put his bookkeeper with me to adjust the matter, and he was in and out himself. He did not go into all the particulars of the adjustment. It was going on under his direction. In so far as he took part in that adjustment, he was representing the corporation, the Truitt-Silvey Hat Company, and I was representing the firm of Callaway & Truitt. We had agreed on the amount of twelve hundred and some odd dollars. When the question of salvage was broached,

Mr. Truitt and I went off to one side and conferred about it, and I told him that I would not give anything for salvage." The adjustment with the insurance company, referred to in the above testimony, was an adjustment under the bonds or policies of indemnity, the issuance of which was contemplated and· provided for in the contract involved in this case, and Mr. Truitt, referred to in this testimony, was the other member of the firm of Callaway & Truitt, though at the time of this adjustment he was the president of the defendant corporation. The fact, however, that he was then the president of the corporation did not prevent him, as an individual, from taking notice that the adjustment which was being made was effectuating the provisions of the contract involved in this case. Considering the evidence quoted above, and the other evidence in the record showing the relation of Truitt both to the corporation and to the firm which was the plaintiff in the court below, and the participation of the corporation and its president in the benefits of the policies taken out in pursuance of the contract referred to above, and the participation of Truitt, after he became president of the defendant corporation, in the negotiations leading up to the adjustment under the policies, it would seem that he was estopped from denying the binding force of that·contract; and that being true, the direction of the verdict followed, as a necessary result, from the uncontradicted evidence· in the case, which established the liability of the defendant, and, with exactness, the proportion of the fund to which the plaintiffs were entitled. Other assignments of error than those directly dealt with in the foregoing opinion appear in the record, but what we have ruled disposes of the essential and controlling questions in the case. *Judgment affirmed. All the Justices concur.*