28590.   SOUTHEASTERN FAIR ASSOCIATION *v.* FORD.

DECIDED MARCH 15, 1941.   REHEARING DENIED APRIL 5, 1941.

*Clifford Hendrix,* for plaintiff in error.
*Hugh B. Cobb, R. L. Evans,* contra.
*BROYLES, C. J.   G. E. Ford filed in the civil court of Fulton

County an action for damages against the Southeastern Fair Association. The petition alleged that the damages resulted from the theft by unknown persons of the plaintiff's automobile while it was parked in the defendant's parking lot at its fair grounds. The defendant's plea to the jurisdiction of the court was stricken, and the demurrers to the amendment were overruled. On the trial the court, without the intervention of a jury, rendered a judgment for $220 in favor of the plaintiff, and the defendant's motion for new trial was overruled. In the bill of exceptions these judgments are assigned as error.

■ The plea to the jurisdiction was based on the alleged ground that the court did not have jurisdiction of the subject-matter of the suit, for the reason that the plaintiff was suing for "personal damages." The plea was properly stricken. The court has jurisdiction in actions seeking recovery of damages caused by injury to personal property, but it has no jurisdiction of suits based upon injuries to the person or to a person's reputation.

■ ■ The controlling question is whether the relationship of bailor and bailee existed between the parties. It is well settled that the relationship of bailor and bailee does not exist unless there is such a delivery of the property that the alleged bailee acquires an independent and temporarily *exclusive* possession thereof, and unless there is an actual change of legal as well as physical possession of the property from the bailor to the bailee, "by virtue of which the bailee is entitled to maintain an action of trover or trespass against one who interferes with his possession, or who negligently destroys the property while in his custody." *Atlantic Coast Line R. Co.* v. *Baker,* 118 *Ga.* 809 (45 S. E. 673). In *Dilberto* v. *Harris,* 95 *Ga.* 571 (23 S. E. 112), cited in behalf of the plaintiff (and where Bleckley, C. J., entered a strong dissent), the facts were quite different from those in the *Baker* case and in this case. Moreover, in *Wall* v. *State,* 75 *Ga.* 474 (where the facts were different from those in *Dilberto* v. *Harris,* supra, and from the facts in the instant case, but where the *principle* of bailments was identical), and the court held that no bailment existed. If there is any conflict between the decisions in the *Dilberto* and the *Wall* cases, the latter, being the older adjudication, is controlling. Numerous Georgia decisions have held that where the operator of an automobile drives it into a regular parking station or lot operated for

profit, and where an attendant thereof takes physical and legal possession of the car and gives to its operator an identifying card which the operator has to return to the attendant before he can regain possession of his car, the relationship of bailor and bailee exists between the parties. But those cases are clearly differentiated from this case. In each of those cases the driver of the car had temporarily relinquished its physical and legal possession to the parking-lot attendant, and the latter had the *exclusive* right of possession, even against the owner or driver of the car, until the identifying card had been returned. In the instant case the undisputed evidence showed, that before entering the defendant's parking lot the plaintiff paid twenty-five cents for a ticket which allowed him to park his car there; that there was nothing on the ticket to identify it as the ticket bought by the plaintiff or to identify his car; that he drove his car into the parking lot, his ticket was taken up by an employee of the defendant, and the plaintiff parked his car at a place designated by another of the defendant's employees; that no employee of the defendant took physical possession of the car or even touched it; that the plaintiff locked the switch, but not the door, of the car; that he then bought a ticket for fifty cents and entered the fair grounds proper through a gate; that when he returned several hours later, about 9:30 o'clock at night, his car had been stolen; that no identifying tag was given to the plaintiff by the defendant or any of its agents; and that the plaintiff had the right, and could have exercised it at any time and without any notice to the defendant, to re-enter his car and drive it out of the parking lot.

In several cases from other States, where the facts were almost identical with those of this case, the appellate courts held that the relationship of bailor and bailee did not exist between the parties. Thompson *v.* Mobile Light &c. Co., 211 Ala. 525 (101 So. 177, 34 A. L. R. 921); Lord *v.* Oklahoma State Fair Asso., 95 Okla. 294 (219 Pac. 713, 34 A. L. R. 927); Suits *v.* Electric Park Amusement Co., 213 Mo. App. 275 (249 S. W. 656). While the facts of those cases are not on "all fours" with the instant case, there is no *material* difference affecting the question of bailment. For instance, in the Thompson case the owner of the car, when he parked it, was given a ticket which stated that "no responsibility for lost or stolen property is assumed." But the Alabama court held, in

effect, that the giving of such a ticket had no bearing on the question of a *bailment,* but was pertinent only on the question whether there was an implied contract between the parties for the defendant to maintain a watch against the theft of the plaintiff's car. While those foreign decisions are not controlling on this court, they are persuasive, and we think that they correctly state the law applicable to the facts of this case. We hold that the demurrers to the petition and the amendment were properly overruled; but in our opinion the judgment awarding damages was not authorized by the evidence, and the refusal to grant a new trial was error.

*Judgment reversed. MacIntyre, J., concurs specially. Gardner, J., dissents.*

MACINTYRE, J. I concur in the view that the plea to the jurisdiction was properly stricken, that the demurrers to the petition as amended were properly overruled, that the evidence failed to show a bailment of the automobile, and that the judgment was contrary to the evidence. However, I base the last two conclusions squarely upon the generally accepted rules of bailment stated in the Code, § 12-101, and *Atlantic Coast Line R. Co.* v. *Baker,* 118 *Ga.* 809, quoted in the majority opinion, and the further rule stated in *Blosser Co.* v. *Doonan,* 8 *Ga. App.* 285 (2) (68 S. E. 1074), that the bailee "must assent to the bailment, either expressly or impliedly, before the relationship of bailor and bailee will be established, with its consequent liabilities." I do not think that either the *Wall* case or the *Dilberto* case is controlling under the facts of the instant case. The *Wall* case is distinguishable from the instant case; for in that case the absence of a bailment was based on the theory that a servant is not the bailee of the property of his employer (or property of a third person left in the possession of the employer as a bailee thereof), such property being in the servant's "mere custody" as distinguished from such possession as would constitute him the bailee thereof. *Henley* v. *State,* 59 *Ga. App.* 595, 599 (2 S. E. 2d, 139); *O'Neal* v. *State,* 10 *Ga. App.* 474 (73 S. E. 696); *Jackson* v. *State,* 21 *Ga. App.* 146 (94 S. E. 55). In the instant case, I think the absence of a bailment should be based on the theory that the evidence did not authorize a finding that the defendant ever had such exclusive possession and control of the property as would constitute him the bailee thereof. I think the holding in the *Dilberto* case that the proprietor of the barber-

shop was a bailee of his customer's hat was based on the theory that furnishing the hatrack for customers' hats, and exercising ordinary care to protect them while customers were being shaved, was an integral part of the proprietor's business. It might be noted that in obtaining a shave in the ordinary barber-shop it is necessary (or at least customary) for the person obtaining a shave to remove his hat. This being so, when the proprietor of a barber-shop furnishes a hatrack there is at least an implied invitation to customers to place their hats thereon, and when a customer does so, it seems to me that there then arises an implied agreement (a bailment) on the part of the proprietor to use ordinary care and diligence in protecting the hat. However, under the evidence in the instant case, it was not an integral part of the defendant's business to furnish the plaintiff a place to park his car; and for this reason I think the *Dilberto* case is not applicable.

GARDNER, J., dissenting. Ford brought an action to recover of the Southeastern Fair Association damages arising from the theft of his automobile from the parking grounds of the defendant, and alleged as the cause of the loss certain acts of negligence of the defendant. The defendant filed its plea to the jurisdiction, and general and special demurrers to the petition, which plea and demurrers the court overruled. To these judgments the defendant filed exceptions pendente lite. The trial resulted in a judgment for the plaintiff, and the defendant filed its motion for new trial on the general grounds, and its amendment setting up special grounds, which motion as amended the court overruled. Exceptions are to the orders of the court overruling the plea, the demurrers, and the motion for new trial.

■ I specially concur in the ruling that under the allegations of the petition the civil court of Fulton County had jurisdiction. "Civil Court of Fulton County" is merely a new name for the Municipal Court of Atlanta (Ga. L. 1939, p. 449), and the act creating the municipal court (Ga. L. 1913, pp. 145, 158, § 26) provides that it shall have "jurisdiction to try and dispose of all civil cases [save where exclusive jurisdiction rests with other courts] of whatever nature, except injuries to the person or the reputation." The injuries alleged as the basis of recovery do not fall within the classification excepted.

■ I specially concur with the majority in the opinion that the

court did not err in overruling the demurrers, but for the reasons hereinafter assigned. The petition alleged substantially, that the plaintiff and his wife visited the fair of the defendant; that the plaintiff paid as entrance fees fifty cents each for himself and his wife, and twenty-five cents "for the storing and parking of his automobile for safe-keeping while he and his wife were visiting the fair exhibits;" that he parked his automobile "at a place inside the fair grounds where he was directed to park same by the defendant;" that "he locked his automobile before leaving same;" that when he later returned (after such time as had been required to visit the exhibits and otherwise attend the fair) to the place "where he had parked his automobile upon the direction of defendant, . . his automobile had been stolen;" and that he notified the defendant that his automobile had been stolen. The negligence alleged was that the defendant failed to enclose properly the grounds, and did not provide the proper guards or watchmen to prevent the theft of his car; and that due to such negligence the defendant failed in the exercise of ordinary care to protect his automobile and prevent it from being taken from its possession, when it had led the plaintiff to believe, under its acts of taking possession of the car and directing its parking and placement, that the car would be safe from theft. A fuller exposition of the petition is unnecessary.

The demurrers raise but one material issue, that of bailment. I think this question is controlled in principle by the rulings in *Dilberto* v. *Harris,* 95 *Ga.* 571 (supra), and *Keene* v. *Lumbermen's Mutual Insurance Co.,* 60 *Ga. App.* 864, 867 (5 S. E. 2d, 379). "A bailment is a delivery of goods or property for the execution of a special object, beneficial either to the bailor or bailee, or both; and upon a contract, express or implied, to carry out this object and dispose of the property in conformity with the purpose of the trust." Code, § 12-101. It was ruled in *Atlantic Coast Line Railroad Co.* v. *Baker,* 118 *Ga.* 809 (supra), that "In order to create a bailment the bailee must have an independent and exclusive possession of the property." The allegations show a delivery of the property to the defendant on a contract of entrance of the car, beneficial both to the plaintiff and defendant, the immediate benefit to the defendant being the sum of twenty-five cents, and to the plaintiff the placement of the car on the fair grounds where he might

leave it and attend the exhibits and other attractions, and then return for it for his departure from the grounds. The allegations show further that the plaintiff, on entering, remained momentarily in manual possession of the car, but, without choice or option, *drove it* and *parked it* under the control and at the direction of the defendant, and at a location on the grounds of the defendant as directed by the defendant; and that then he left it locked, and went to attend the fair for such period of time, long or short, as might be necessary for all purposes for which he had paid the fees for himself and wife. It is clear that during the time the plaintiff was driving and parking his car under the direction of the defendant the car was not in the independent and exclusive possession of the defendant and it is equally clear that the car would not have been in the defendant's independent and exclusive possession during the time of driving off the grounds. The question is, was the car in the independent and exclusive possession of the defendant during the time the plaintiff was away attending the fair and its attractions? If it was, the possession of the defendant was a bailment for hire, and the defendant was required to exercise "care and diligence in protecting and keeping" it "safely" (Code, § 12-103), the degree of care being as for a bailment for hire.

The court held in *Dilberto* v. *Harris,* supra: "The proprietor of a barber-shop kept for public patronage is liable to a customer for the value of his hat, which was deposited on a hatrack, in the shop and which, while the customer was being shaved, disappeared from the shop and was thus lost, such proprietor being, under these facts, a bailee for hire as to the customer's hat." Though the evidence was conflicting as to whether the plaintiff or the defendant's porter placed the hat on the hatrack, it was certain that the hat was placed on the rack in the barber-shop where all customers customarily placed their hats, and that the plaintiff then was shaved. It must be assumed that the court was fully cognizant of the law of bailments for hire, that the possession of the property must be in the independent and exclusive possession of the alleged bailee. It is clear that the effect of the decision was that while the hat was on the rack along with hats of other customers, and while the plaintiff was being shaved, the hat during that period of time was in the independent and exclusive possession of the barber, notwithstanding the hat may have been but a few feet distant from the plain-

tiff, and notwithstanding there was no contractual inhibition to the plaintiff recovering his hat at will, unaided, from the rack after the shave. Under these principles it appears that the possession of the car in the instant case was that of a bailee for hire. While the defendant's agents did not take manual control of the car and park it, the defendant nevertheless absolutely controlled and directed the parking of it in its "shop" or grounds; and, in analogy to the period of time the customer was "away" being shaved, the plaintiff was "away" during the time indicated, seeing the fair. It was not indicated as important (the decision being silent in this respect) that to perfect the bailment for hire it had been necessary that the proprietor alone recover the hat from the rack for his customer, but that if the customer himself took it from the rack he thereby defeated the bailment. The fact that the plaintiff in the instant case had the right to recover his car from its location where parked, without first getting permission instanter from the defendant or without first taking manual delivery from the defendant, I think immaterial to defeat the bailment for hire. While a bailment for hire may be the more readily evidenced when the proprietor of a parking lot issues a ticket and retains a stub, and thereafter requires the presentation of the ticket before his manual surrender of the possession of the car to the customer, such requirement does not alone determine the existence of the bailment. A bailment may exist without such delivery. *Keene* v. *Lumbermen's Mutual Insurance Co.*, supra. I think such requirement, when used, goes more to the proper execution of the bailment than necessarily to its existence.

Moreover, the instant case on its facts is more strongly that of a bailment for hire than was *Dilberto* v. *Harris* on its facts. In the *Dilberto* case no fee, as such, was paid for the deposit of the hat. In the instant case a fee of twenty-five cents was paid for entrance of the car for parking. The necessity for depositing the hat (unless the customer came bareheaded) was interrelated to the procuring of the shave, in that such "accommodation" went to the promotion of the business. I think that likewise it was in the financial interest of the defendant, in promoting attendance on its fair, to provide (except as to those who walked) a parking space for the automobiles of its customers, notwithstanding it charged extra therefor. The converse of independence and exclusiveness

of possession of the property in the alleged bailee would be seen, had the plaintiff been permitted to drive his car at will over the fair grounds, from which, parked or moving, he could have better seen the fair. No such permission obtained; the only permission which it may be inferred from the allegations the plaintiff had was (1) to park the car where directed, and (2) to drive it directly out when leaving the grounds. The fact that the car was left locked by the plaintiff would not of itself determine or defeat the existence of the bailment. Independence and exclusiveness of possession is not necessarily dependent on the right of the bailee freely to move the property about. A bailment may be of that which is fixed when placed in the possession of the alleged bailee, as well as that which is readily movable. There is no conflict in these rulings with those in *Wall* v. *State,* 75 *Ga.* 474. The fact that the defendant's business was not one which was operated the year round makes no difference. When the plaintiff *left* the car and went to see the exhibits, he did not temporarily abandon his car as if he had parked it on the street, but he left it in the physical possession of the defendant. I think the plaintiff was buying something more than space (which might have been plentifully obtained within convenient walking distance of the fair grounds, and without charge, *and without protection of a bailee*). I think he was purchasing all the benefits of a bailment for hire. "Where a fair association provided parking space for cars and charged for the same, *held,* that the association occupied the position of bailee." Chattanooga Interstate Fair Association *v.* Benton, 5 Tenn. App. 480. The case just cited and the instant case are largely identical on the facts, save that in the Benton case it was alleged and proved that an agent assured the bailor that his car would be taken care of, and that the fair association would be responsible for it. But such assurance would not be a sine qua non to the establishment of a bailment. The assurance would be no more than the law already required. While such assurance might be the better indicative of the intention of the alleged bailee to assume independent and exclusive possession, the absence of such assurance would not in itself defeat a bailment *otherwise* established. The ruling of the Benton case, not being qualified as resting upon the necessity of such assurance of care, I think is persuasive to the extent that a fair association, under the allegations and facts of the instant case, is a bailee for hire.

■ I dissent from the ruling in the majority opinion that the judgment was not authorized by the evidence. In addition to substantiating the allegations, the evidence more fully showed that a certain portion of the fair ground was given over to the parking of cars, into which the plaintiff first entered by buying a ticket for the car, then driving forward about thirty feet, when his ticket was collected and the employees of the defendant started directing and controlling the movements of the plaintiff to the point of parking; and that upon leaving the car the plaintiff bought tickets for himself and his wife and entered the fair ground proper, which was separated by a fence from the parking section.

### ON REHEARING.

BROYLES, C. J. Counsel for the defendant in error, in their motion for rehearing, cite *Keene* v. *Lumbermen's Mutual Insurance Co.,* 60 *Ga. App.* 864 (supra), *American Insurance Co.* v. *Keene,* 61 *Ga. App.* 754 (7 S. E. 2d, 427), and *Steadham* v. *Baskin,* 51 *Ga. App.* 36 (179 S. E. 636). The *Steadham* case was an action in trover against a warehouseman, to recover cotton stored with him, for which. he had given his receipts. This court held that no conversion of the cotton was shown when the warehouseman refused to deliver the cotton without production of the receipts, or without the giving of security to indemnify him; "Aliter where the warehouseman does not put his refusal to deliver upon this ground, but claims he has made a delivery to other parties, it being made to appear from the evidence that the plaintiff was the owner of the cotton and holder of the receipts at the time of the demand." It is obvious that the foregoing decision is not applicable to the facts of the instant case. The other two cases are also differentiated by their facts. In each of them the parking lot in question was a regular parking station, operated daily the year round, for profit, while in this case there was a clear inference from the evidence that the parking lot was used only for a week or two each year, while the fair was in operation, and for the convenience of the patrons of the fair. However, if there is any material conflict as to the principle of bailment between the decisions in those cases and the decision in *Atlantic Coast Line R. Co.* v. *Baker,* 118 *Ga.* 809, cited in our opinion, those decisions of this court must yield to that of the Supreme Court in the *Baker* case. Applying that ruling of the Supreme Court to the facts of the instant case, it

clearly appears that the relationship of bailor and bailee did not exist between Ford and the Southeastern Fair Association.

*Judgment adhered to. MacIntyre, J., concurs. Gardner, J., dissents.*