44945.   BROWN v. FIVE POINTS PARKING CENTER.

SUBMITTED JANUARY 8, 1970—DECIDED MAY 27, 1970.

*I. J. Parkerson,* for appellant.

*Arnall, Golden & Gregory, H. Fred Gober,* for appellee.

EBERHARDT, Judge. ■ ■ As a general rule the relationship of bailment is created when one parks his automobile with a garage or parking lot. *Code* § 12-403; *Bunn v. Broadway Parking Center,* 116 Ga. App. 85 (156 SE2d 464); *AAA Parking v. Black,* 110 Ga. App. 554 (139 SE2d 437); *Nelliger v. Atlanta Baggage &c. Co.,* 109 Ga. App. 863 (137 SE2d 566). But the parties may, by agreement, create a different relationship, and it

is our view that when plaintiff accepted the parking tickets, parked his car pursuant thereto, and signed the tickets for delivery back to the garage as evidence of the contract under which the car had been parked when he removed it from the garage, he was bound by the terms. He thus recognized that there was no bailment relationship and that he specifically assumed the risk of loss by theft. Cf. *Holly v. Southern R. Co.,* 119 Ga. 767 (47 SE 188); *Central of Ga. R. Co. v. Glascock,* 117 Ga. 938 (43 SE 981); *Cooper v. Raleigh & G. R. Co.,* 110 Ga. 659 (4) (36 SE 240).

■ Although *Code* § 12-403 would, absent a contract or arrangement to the contrary, raise the relationship of bailor and bailee, the parties are not prohibited from creating a different one. As an illustration, joint tenancy is abolished in this State by the provisions of *Code* § 85-1002, but, as the Supreme Court and this court have held, it is not prohibited and the parties may, by special contract create a relationship of joint tenancy in property. *Equitable Loan &c. Co. v. Waring,* 117 Ga. 599. (9) (44 SE 320, 62 LRA 93, 97 ASR 177); *Wilson v. Brown,* 221 Ga. 273 (2) (144 SE2d 332); *Sams v. McDonald,* 117 Ga. App. 336 (160 SE2d 594).

It is a general rule of contract law that unless prohibited by statute or public policy the parties are free to contract on any terms and about any subject matter in which they have an interest, and any impairment of that right must be specifically expressed or necessarily implied by the legislature in a statutory prohibition and not left to speculation. Harris v. Runnels, 12 How. (53 U. S.) 79 (13 LE 901); *Toole v. Wiregrass Development Co.,* 142 Ga. 57 (82 SE 514); *Mutual Life Ins. Co. v. Durden,* 9 Ga. App. 797 (72 SE 295); Restatement, Contracts §·580. "A contract can not be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary to good morals and contrary to law, or unless the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law." *Camp v. Aetna Ins. Co.,* 170 Ga. 46, 50 (152 SE 41, 68 ALR 1166). A contract of license or for the simple rental of space in a garage or parking

lot is not one forbidden by law, nor is there any inhibition against the specific assumption of loss resulting from fire or theft. *Code* § 12-403 does not purport to pre-empt the type of arrangement which the parties may agree upon; its effect is simply to provide what the relationship will be when there has been no contract otherwise. It prescribes no penalty for contracting otherwise. See *Southern Flour & Grain Co. v. Smith,* 31 Ga. App. 52 (120 SE 36).

■ Appellee urges that since plaintiff parked his own car, locked it and took the key with him a bailment could not have arisen, citing *Atlantic C. L. R. Co. v. Baker,* 118 Ga. 809 (1) (45 SE 673) where it was held that "In order to create a bailment the bailee must have an independent and *exclusive* possession of the property," a principle which we recognized in *Southeastern Fair Assn. v. Ford,* 64 Ga. App. 871 (14 SE2d 139) and *Hartley v. Robinson,* 78 Ga. App. 594 (51 SE2d 617). It is settled that, absent a contract creating some different relationship, there is a bailment when the owner of an automobile leaves the key with the operator of the garage or parking lot, or is required to do so—for without question that does give the operator an independent and exclusive possession. See *Elliott v. Levy,* 77 Ga. App. 562 (49 SE2d 179) ; *AAA Parking, Inc. v. Black,* 110 Ga. App. 554, supra, and *Parker Motor Co. v. Spiegal,* 33 Ga. App. 795 (127 SE 797).

We have recently held that when the customer of a bank rents a safety deposit box and places money or securities therein the relationship of bailor and bailee arises between him and the bank. *Buena Vista Loan &c. Co. v. Bickerstaff,* 121 Ga. App. 470 (174 SE2d 219). Whether our holding in that case may conflict with that of the Supreme Court in the *Baker* case and in *Tow v. Evans,* 194 Ga. 160, 163 (20 SE2d 922) need not be considered here, since we conclude that the specific terms of the contract raised a different relationship between the parties, and the matter of independent and exclusive possession of the automobile is not a matter necessary to the reaching of our conclusion.

■ That plaintiff did not read the terms of his contract as printed on the parking tickets cannot excuse him. It appears that he is engaged in the practice of law, and we must assume

that he is fully capable of reading and understanding them. He had been parking at the facility for several weeks, receiving a similar ticket each time. It is the duty of one who contracts to read and inform himself of the contract's terms. *Truitt-Silvey Hat Co. v. Callaway,* 130 Ga. 637 (2) (61 SE 481); *Lewis v. Foy,* 189 Ga. 596 (6 SE2d 788). He cannot be excused from so doing because he may have been "in a hurry." *W. P. Brown & Sons Lbr. Co. v. Echols,* 200 Ga. 284, 287 (36 SE2d 762), or because he was "too busy." *Stoddard Mfg. Co. v. Adams,* 122 Ga. 802 (50 SE 915). Thus, he is charged with knowledge of the terms which by his conduct he accepted and became bound.

■ If the complaint can be construed as asserting a claim for fraud and deceit by reason of the sign at the entrance indicating that the facility was an "insured garage," the proof wholly fails. The language of the sign is too vague and uncertain to form the basis for any enforceable contract. *Wells v. H. W. Lay & Co.,* 78 Ga. App. 364 (2) (50 SE2d 755). It does not represent that the garage carries liability insurance or theft insurance protecting customers whose cars are parked therein, nor are any terms of insurance carried on the sign. We cannot know, nor is there any proof, as to the type or kind of insurance referred to, or the terms, conditions or amount thereof. Consequently, the elements necessary for the showing of fraud and deceit do not appear. *Daugert v. Holland Furnace Co.,* 107 Ga. App. 566, 569 (130 SE2d 763). "The requirement of certainty extends not only to the subject matter and purpose of the contract, but also to the parties, consideration, and even the time and place of performance, where these are essential. Its terms must be such that neither party can reasonably misunderstand them. It would be inequitable to carry a contract into effect where the court is left to ascertain the intention of the parties by mere guess or conjecture, because it might be guilty of erroneously decreeing what the parties never intended or contemplated." *Williams v. Manchester Building Supply Co.,* 213 Ga. 99, 101 (97 SE2d 129). And see *Parks v. Harper,* 43 Ga. App. 269 (158 SE 454); *Ga. Box & Mfg. Co. v. Southern Bottlers' Service Co.,* 25 Ga. App. 360 (103 SE 188). Insurance is a matter of contract, which must be in writing. *Code Ann.* § 56-2402; *Mitch-*

*ener v. Union Central Life Ins. Co.,* 185 Ga. 194, 195 (194 SE 530). Nor can the contract be made partly in writing and partly in parol. *Athens Mut. Ins. Co. v. Evans,* 132 Ga. 703 (4) (64 SE 993). Insurance contracts are to be governed generally by the rules of law which govern other contracts. *Clay v. Phoenix Ins. Co.,* 97 Ga. 44, 53 (25 SE 417).

This is not a suit against the defendant or against an insurance company on a policy of insurance. There is no proof that there was any policy written by or for the defendant for the benefit of the plaintiff. There is no contention and no proof that the defendant contracted with the plaintiff to obtain or carry insurance for his benefit. See *Crozier v. Provident Life & Acc. Ins. Co.,* 53 Ga. App. 572 (2) (186 SE 719). Such a contract, to be enforceable, would, inter alia, have to reveal the kind, type, and amount of insurance to be obtained,—the hazard to be insured against. Cf. *Farlow v. Barton,* 60 Ga. App. 287 (3 SE2d 777); *Farmers & Merchants Bank v. Winfrey,* 89 Ga. App. 122 (78 SE2d 818).

Moreover, we held in *Renfroe v. Fouche,* 26 Ga. App. 340 (6) (106 SE 303) that "[a] bailee cannot by the posting of a notice to the effect that he will not be responsible for damage to articles bailed by fire or theft or relieve himself of his common law liability to exercise due care in preserving the property against damage from such causes," and it must follow that if the bailee can neither limit nor relieve himself of his responsibility by the posting of a sign, because the sign does not become a part of the contract, he should not be held to increase his liability by posting a sign to the effect that his is an "insured garage."

■ No fraud or deceit appears in the transaction by which plaintiff entered into his contract with the defendant for the storing of his car. He was fully informed of the terms each time the car was stored. *Camp Realty Co. v. Jennings,* 77 Ga. App. 149 (1) (47 SE2d 917).

■ Since plaintiff specifically assumed the risk of loss from theft in storing his car in defendant's garage, no right to recover any amount is shown.

We are not unmindful of the rulings in *American Laundry Co. v. Hall,* 27 Ga. App. 717 (109 SE 676) and *Red Cross Laun-*

*dry v. Tuten,* 31 Ga. App. 689 (1) (121 SE 865). They are, however, distinguishable from the situation here upon two grounds. First, there was a bailment relationship between the laundry and its customer, for it did have an independent and exclusive possession, and the contract raised no other relationship. Secondly, and while the validity of the basis may be seriously doubted, plaintiff here was required to sign and return the parking ticket with the limiting terms on it.

The case of *Renfroe v. Fouche,* 26 Ga. App. 340 (6), supra, does not require a different conclusion here. While the provision of a posted notice does not become a part of the terms of the contract, the terms printed on the receipt for the item bailed or on a parking ticket delivered when the car is parked, or those printed on a railroad ticket are binding. *Southern R. Co. v. Dinkins & Davidson Hardware Co.,* 139 Ga. 332, 334 (77 SE 147, 43 LRA (NS) 806). And see *Moses v. East Tennessee, Va. &c. R.,* 73 Ga. 356; *Lewis v. Western & A. R. Co.,* 93 Ga. 225 (18 SE 650); *Southern R. Co. v. White,* 108 Ga. 201 (33 SE 952); *Holly v. Southern R. Co.,* 119 Ga. 767, supra.

Where the owner of mules hired them to another and agreed to assume the risk of injury to them, the bailee was not responsible for injuries to them while in his possession unless resulting from gross neglect or wilful misconduct on his part. *Evans & Pennington v. Nail,* 1 Ga. App. 42 (57 SE 1020). In the absence of a statute to the contrary a party may contract against liability resulting from his own negligence. *Ashley v. Central of Ga. R. Co.,* 7 Ga. App. 711 (1) (68 SE 56); *King v. Smith,* 47 Ga. App. 360 (170 SE 546); *Brady v. Glosson,* 87 Ga. App. 476 (74 SE2d 253); *Hawes v. Central of Ga. R. Co.,* 117 Ga. App. 771 (162 SE2d 14). Cf. *Golden v. National Life &c. Ins. Co.,* 189 Ga. 79 (5 SE2d 198, 125 ALR 838).

The evidence did not authorize a finding of either gross negligence or wilful misconduct by the defendant in keeping plaintiff's car while it was stored.

■ Whether the relationship was that of bailor and bailee, as contended by the plaintiff, or of licensor and licensee, as contended by the defendant, the measure of damages was the fair market value of plaintiff's battery and battery box top at the

time and place of loss. *Warren v. Mitchell Motors,* 52 Ga. App. 58 (4) (182 SE 205) ; *American Ins. Co. v. Keene,* 61 Ga. App. 754, 756 (7 SE2d 427). His right to recover, if any, arises out of contract. "Damages growing out of a breach of contract, in order to form the basis of a recovery, must be such as can be traced solely to the breach, must be capable of exact computation, must have arisen naturally and according to the usual course of things from such breach, and must be such as the parties contemplated as a probable result of the breach." *Sanford-Brown Co. v. Patent Scaffolding Co.,* 199 Ga. 41 (33 SE2d 422). Plaintiff has the burden of showing both the breach and the damage. *James v. Emmco Ins. Co.,* 71 Ga. App. 196 (30 SE2d 361). It cannot be left to speculation, conjecture or guesswork. *Studebaker Corp. v. Nail,* 82 Ga. App. 779 (62 SE2d 198). Punitive or exemplary damages are not recoverable. *Hadden v. Southern Messenger Service,* 135 Ga. 372 (2) (69 SE 480). Neither bad faith nor stubborn litigiousness arises from a mere failure to settle a claim, or in defending an action thereon. *Macon, Dublin & Savannah R. Co. v. Stewart,* 125 Ga. 88 (2) (54 SE 197) ; *State Mut. Ins. Co. v. McJenkin Ins. &c. Co.,* 86 Ga. App. 442 (2) (71 SE2d 670). Consequently, neither attorney's fees nor exemplary damages could be recovered in this action.

It may be that the operation of a parking garage or of a parking lot has become so affected with a public interest in these days when the number of automobiles is constantly increasing and the available space for parking grows less that they should be prohibited from limiting their liability for loss or damage to the vehicle while parked, as was done to the railroads when they sought to limit their liability for goods shipped (see *Code* § 18-102; *Hearn v. Central of Ga. R. Co.,* 22 Ga. App. 1, 3 (95 SE 368)), or as was done when employers sought to exempt themselves from liability to their servants for negligence (see *Code* § 66-302), or that they should be required to carry adequate insurance to protect their customers against losses from fire, theft, etc., as is done to public warehousemen (see *Code Ann.* § 111-402). But that is a matter for the General Assembly, or perhaps for the Mayor and Aldermen of Atlanta.

*Judgment affirmed. Bell, C. J., Jordan, P. J., Hall, P. J., Deen, Quillian and Whitman, JJ., concur. Pannell and Evans; JJ., dissent.*

PANNELL, Judge, dissenting. I concur in Division 6 of the opinion, but dissent from the remainder of the majority opinion and the judgment rendered therein.

Plaintiff paid a monthly rate for the privilege of parking in a multi-level parking garage operated by the defendant. He parked his automobile where he pleased and was not relegated to a particular spot and no attendant ever handled or took possession of the automobile for the purpose of parking it or delivering it to the plaintiff who had the privilege of removing the automobile and bringing it back at his convenience. When the plaintiff brought the automobile into the parking lot he was given a ticket on the face of which appeared the following: "Five Points Parking Company. Give ticket to attendant at exit when car is removed. This is a license, no bailment created. Holder may park one automobile in this area at his own risk of any fire, theft or damage to auto or contents of same." *There was no evidence whatsoever that plaintiff had ever read what was on the face of the ticket nor was there any evidence that its provisions had ever been called to his attention.* Each time plaintiff removed the automobile from the parking garage, he would surrender the ticket after signing it on the back. At one of the entrances to the parking garage was a large sign with the following words thereon: "Park 30¢ ½ hour. Clean—dry—protected—insured garage. Elevators to Peachtree St., Decatur St." This sign had been there for several years *and was placed there for the purpose of attracting customers.* The plaintiff relied upon this sign and changed his place for parking his automobile from another nearby lot to this lot in reliance upon this sign and that his auto would be protected and insured against damage by others and fire and theft. While it was in the parking garage, a battery was stolen from the plaintiff's automobile. He brought an action seeking recovery for the value of the battery plus the value of time spent by him in buying and replacing the battery. Upon the trial, the trial judge excluded testimony as to the time and the value thereof spent by plaintiff in

securing the new battery and installing the same and directed a verdict for the defendant. The plaintiff appealed.

■ The following contain my views in reply to Divisions 1, 2, 3 and 7.

■ Do the facts (in the absence of a special contract) show a bailment here?

"A bailment is a delivery of goods or property for the execution of a special object, beneficial either to the bailor or bailee, or both; and upon a contract, express or implied, to carry out this object and dispose of the property in conformity with the purpose of the trust." *Code* § 12-101. "In all cases the bailee, during the bailment, *has a right to the possession of the property,* and in most cases a special right of property in the thing bailed. For a violation of these rights by anyone he is entitled to his action." *Code* § 12-102. "All bailees are required to exercise care and diligence in protecting and keeping safely the thing bailed. Different degrees of diligence are required, according to the nature of the bailments." *Code* § 12-103. (Emphasis supplied.) The evidence in the present case showing the facts as stated above, were sufficient to authorize, if not demand, a finding that possession and control of the automobile was surrendered to the defendant and a bailment was created because the plaintiff received a ticket when he parked his car and surrendered this ticket and signed his name thereon when he removed his car from the parking garage. *Keene v. Lumbermen's Mut. Ins. Co.,* 60 Ga. App. 864 (5 SE2d 379). This feature distinguishes the present case from *Hartley v. Robinson,* 78 Ga. App. 594 (51 SE2d 617). Nothing to the contrary was ruled in *Southeastern Fair Assn. v. Ford,* 64 Ga. App. 871, 880 (14 SE2d 139), rendered by a three-judge division of this court with one concurring and one dissenting. That case involved no ticket surrender and bears within its own writing the distinction between that case and the present case, when it distinguished, on motion for rehearing, certain cases referred to therein, in the following language: "In each of them the parking lot in question was a regular parking station, operated daily the year round, for profit, while in this case there was a clear inference from the evidence that the parking lot was used only for a week or two

each year, while the fair was in operation, and for the convenience of the patrons of the fair." See also in this connection *White v. American Ins. Co.*, 53 Ga. App. 320 (185 SE 605); *Nelliger v. Atlanta Baggage &c. Co.*, 109 Ga. App. 863 (137 SE2d 566).

*The jury was authorized to find that it was necessary for the plaintiff to surrender the ticket in order to regain possession of his automobile.* If this be true, a bailment was by necessity created as the defendant had the exclusive possession of the automobile *until the ticket was surrendered.* Mere possession of the key by the alleged bailor is not determinative of the question; in other words, it is not the possession of the key that solves the problem in this case. If possession is otherwise exclusively held by the alleged bailee to the extent that it cannot be regained by the alleged bailor without consent of the alleged bailee, a bailment is created even though the key may be retained by the alleged bailor. See in this connection *Buena Vista Savings & Loan Assn. v. Bickerstaff*, 121 Ga. App. 470 (174 SE2d 219). That the bailee could not *operate* the automobile because the bailor had the key does not prevent the bailee for *storage* from being in the exclusive possession of the automobile, where, as here, it was necessary to secure the permission of the bailee, by surrendering and signing the ticket, in order for the bailor to regain possession of the item bailed. If one should leave a box with another for safe keeping which is locked and retains the key, the retention of the key has nothing whatsoever to do with the determination of whether the contract is one of bailment or not, if in order to secure possession of the bailed item, it is necessary for the bailor to secure the permission of the bailee by surrender of an identifying ticket. An automobile is no different in this respect. There was a bailment here unless the signing on the back of the parking ticket constitutes a contract.

■ Was there any special contract between the parties eliminating the apparent contract of bailment?

Where the bailee in the present case issued a ticket upon receipt of the automobile reciting that the contract was one of license rather than bailment and that there was no liability for

damages or fire or theft, there arises no contract releasing the bailee from liability or changing the contract from one of bailment to one of license.

As was ruled in *American Laundry v. Hall,* 27 Ga. App. 717 (1) (109 SE 676): "Where a bailee, such as a laundry company, in accepting articles of wearing apparel from a customer, leaves with the customer a paper containing a memorandum of the articles bailed, with a printed notice thereon to the effect that in the event of loss or damage to the articles the bailee's liability therefor shall not exceed a certain sum, to be determined by its proportion to the amount charged for the laundering of the articles, *the mere receipt by the customer of the memorandum containing such printed notice does not amount to an agreement and assent to the terms of the notice,* and therefore there arises no special contract whereby the customer consents to any limitation of liability of the bailee on account of the latter's negligence." To the same effect, see *Red Cross Laundry v. Tuten,* 31 Ga. App. 898 (1) (121 SE 865).

*There was no showing in the present case that the plaintiff read the language on the ticket and, after reading the same, agreed thereto or that it was ever, in fact, called to his attention.* Whether, even under these circumstances, the language was sufficient to change a contract of bailment to one of license and release the defendant from the obligation of a bailee to exercise ordinary care, it is not necessary to decide except under the majority view. See in this connection Anno. 175 ALR 8, § 55 et seq.

The majority *assume* the plaintiff was informed of the language on the front of the ticket and *assume* that when the plaintiff signed on the back of the parking ticket *each time* he took his automobile from the parking garage that a contract was entered into by reason of such signing. While the evidence might *authorize* such conclusion, *it does not demand it* and in order for the majority opinion here to be correct, the evidence must *demand* such a conclusion. The evidence in this area discloses only that the plaintiff surrendered the ticket *as required* and signed it on the back each time he removed the automobile. This and nothing more. The so-called contract was on the front. This evidence more readily authorizes a finding that the

signing on the back of the ticket, which was surrendered when the automobile was removed from the parking garage, was merely a return receipt for the automobile or an identification of the person who removed the automobile.

What this evidence means is for a jury of twelve men, and a jury only, and the conclusions to be drawn from such evidence are not matters for *assumption* by the nine judges of this court. If there be a jury question as to this matter then the trial court was in error in directing a verdict.

To further show the error of the majority *assumption* that the signing of the ticket amounted to a contract as to what appeared on the face of the ticket, we have only to call attention to the fact that on the occasion in question when the plaintiff discovered his battery was stolen, the evidence does not show he had signed the ticket given to him *for that day's parking,* and therefore the signing of the ticket would not be controlling here. In other words, under the majority ruling *the terms of the contract cannot be determined until the contract is at an end,* that is, when the plaintiff retrieves his automobile from the parking garage.

While the majority admit that in the absence of a special contract a bailment was created here, they blandly distinguish this case from *American Laundry v. Hall,* 27 Ga. App. 717, supra, and *Red Cross Laundry v. Tuten,* 31 Ga. App. 898, supra, on the ground that in these two cases a bailment existed. May I ask them, where is the distinction?

While the majority hold that *Code* § 12-403 would not, as a matter of public policy, prevent a special contract of the parties to the contrary, this holding was not necessary to a decision of this case, and for that reason I dissent therefrom.

■ The following contains my views in reference to Divisions 4 and 5 of the majority opinion.

I dissent from these rulings primarily on the basis that it is not necessary to reach these questions if the case be properly decided, but even if they were properly reached, I could not agree with the reasons given for the conclusions reached by the majority. If, as the majority say, the complaint be sufficient to raise the question of *fraud and deceit* by reason of the advertising at the parking garage, it is no answer to this claim that

the language of the sign is too vague and uncertain to form the basis for any enforceable *contract* and that a *contract* of insurance must be in writing.

The judgment should be reversed.

I am authorized to state that Judge Evans concurs in this dissent.