SHADRACK T. CRAWFORD, WILLIAM SIRINE, and others, plaintiffs in error, vs. WRIGHT BRADY, as administrator, *de bonis non*, of BURTON T. DENNARD, and as administrator of WILLIAM M. BRADY, and others, defendants in error.

[1.] The absence of a party in the military service, did not, under the act of 1861, oblige the Court to grant a continuance. It was subject to discretion.

[2.] Parol evidence is admissible to explain material alterations and ambiguities in a written instrument.

[3.] The bond in this case, created a right in the husband *as trustee* of his wife, and a Court of Equity will carry out the trust.

[4.] This not being a settlement made by the husband upon the wife, is not void against his creditors because not recorded.

[5.] To defeat the wife's title by survivorship, the husband must reduce her property to possession as husband.

[6.] The facts of this case do not show such a reduction to possession by the husband in his lifetime as will defeat his wife's title by survivorship.

In Equity. In Sumter Superior Court. Bill for Discovery, Injunction and Direction. Tried before Judge CLARK. April Term, 1864.

Counsel for Crawford and several others, creditors of Wm. M. Brady, deceased, moved to continue the case, stating that until November last, he, the counsel, had been in the military service of the Government; that during his connection with the service he was unable to prepare for the trial of said case; that two of the principal creditors whom he represented, were not in attendance on the Court, and he desired their presence and assistance; that he understood one of them (Sirrine) was in the military service of the Confed-

Crawford, et. al. vs. Brady.

erate States and absent from the Court on that account. It appeared further that Mr. Sirrine entered the service about six weeks before the Term of the Court commenced. The Court overruled the motion, on the ground that Sirrine not having been in the service until six weeks before the Court met, he had full opportunity to have conferred with his counsel relative to the trial of the case. This ruling was excepted to.

The case was then submitted to the jury, and the evidence disclosed the following facts :

William Dennard died, leaving a will, in which all his property, then worth about 30.000.00,except a few small legacies, was given to his wife and his son Burton T., nothing being given to his daughter, Mrs. Wm. M. Brady. Shortly thereafter, Brady, in right of his wife, and his wife, filed a caveat against the probate of the will. Pending proceedings for that purpose, Burton T. Dennard agreed to turn over an amount equal to one-third of the estate belonging to Wm. Dennard when he died, if said caveat was withdrawn. The proposed compromise was accepted, and a bond was executed by Burton T. Dennard, with N. Collier as security, in pursuance of the agreement stated, of which the following is a copy :

" Georgia,    }
  Baker County }

Know all men by these presents, that we, Burton T. Dennard and Needham Collier are held and firmly bound unto William M. Brady, in trust for his wife, in the sum of $15.000, for the true payment of which we bind ourselves, our heirs, executors and administrators jointly and severally, unto the said William M. Brady, his heirs and assigns. Sealed with our seals and dated this 28th September, 1852.

The condition of the above bond is such that whereas there is a law suit pending on the appeal in Baker Superior Court, at the instance of William M. Brady, in right of his wife, contesting and caveating the will and testament of

William Dennard, deceased, which is propounded by Irene Dennard, executrix of said will; and whereas, the said Irene Dennard and the said Burton T. Dennard, the principal legatees under said will, have this day consented and agreed to compromise and settle said lawsuit on the following terms and stipulations, to-wit:

1st. The said Wm. M. Brady, in consideration of the stipulations of the other parties, doth hereby agree to withdraw his caveat and objection to the said will, and allow the same to stand as the only true last will and testament of the said Wm. Dennard, deceased. 2d. That said Irene Dennard is to receive the property bequeathed to her under said will. 3d. The said Burton T. Dennard doth agree, out of the residue of said estate, to which he is entitled under said will, to convey to the said Wm. M. Brady, in trust for his wife Julia, an amount equal to one-third of the whole estate of which the said Wm. Dennard died seized and possessed, and the increase up to the time of the division, as soon as he shall have attained to the age of twenty-one years. Now should the said Burton T. Dennard, his heirs, executors and administrators well and truly perform the stipulations and agreement as above set forth, unto the said Wm. M. Brady, his heirs and assigns, then, and in that event, this bond to be void, else to remain in full force and effect.

(Signed)      BURTON T. DENNARD, [L.S.]<br>
N. W. COLLIER, [L.S.]

Test—JOHN A. DAVIS,
Not. Pub. Baker Co."

This bond was originally drawn payable to "Wm. M. Brady, in right of his wife," but when Burton T. Dennard came to execute it, Collier suggested to him to have it so changed as to settle the property on Mrs. Brady, and Burton T. then refused to sign it until the words "in right of" were erased, and the words "in trust for" substituted. Wm. M. Brady was not present when the bond was executed, but this change in the phraseology was afterwards mentioned to him by Mr. Davis, and he acquiesced in it.

[Counsel for creditors objected to this testimony as to the changes made in the bond, and what was said when it was executed; but the Court overruled the objection, and admitted the evidence, to show that the bond had been accepted by Brady with the understanding that it was intended, and its effect was, to create a separate estate in his wife.]

Burton Dennard became twenty-one years of age in January, 1853, and his share of his father's estate was then turned over to him, and he and Brady went jointly into the possession of the lands and negroes, Brady having very little property of his own; and they commenced, in January, 1853, to crop together, and continued so to do until December following, when Burton Dennard died. No conveyance was ever formally executed by him, but he ratified said bond after he became of age. After his death Brady administered on his estate, paid a part of the debts, and subsequently obtained an order from the Ordinary to sell Dennard's undivided two-thirds interest in the negroes jointly possessed, as aforesaid, by the said Dennard and Brady at the death of the former. A sale took place accordingly. One of the negroes was sold to and paid for by one Kendrick. The remainder were, at Wm. M. Brady's request, bid in by Wright Brady for the estate, and went back into the possession of Wm. M. Brady, Wright Brady paying nothing on his bid. Wm. M. Brady, as administrator aforesaid, made no returns to the Ordinary of said sale, or of any of his dealings with the estate of Dennard. He and his family remained on the plantation, cultivating the same with the negroes possessed by him and Dennard in the lifetime of the latter, until January, 1857, when he died, leaving debts and judgments of the said Dennard unpaid, and a large amount of debts, mostly in judgment, due by himself, unpaid also.

The following unpaid fi. fas. against Wm. M. Brady, amongst a great many others of a subsequent date, were in evidence: One in favor of L. G. Sutton for principal $250, interest to January 1st, 1854, $52.50, cost $14.00; one in favor of Morehouse & Co. for principal $150.00, interest to

12th November, 1852, $15.96, cost $11.00 ; one in favor of J. B. Ross & Co. for principal $90.00, interest to 12th November, 1852, $5.50, cost $23.00.

The bond made to Brady in trust for his wife was never recorded, and his creditors had no notice of its existence. Their debts were contracted whilst he was in the possession of said property belonging originally to old Mr. Dennard, perhaps, but there was no proof of this, except the date of the judgments and the memorandum of the date from which interest was counted.

Counsel for plaintiffs in error requested the Court to charge the jury :

1. That said bond does not create a separate estate in Mrs. Brady, now Mrs. Wilcher.

2. That the suit respecting old Mr. Dennard's will having been compromised on the terms mentioned, the making of the bond by Burton Dennard and its subsequent ratification by him was a reduction into possession by Wm. M. Brady of his wife's interest in her father's estate under said compromise.

3. That said bond was a debt due to Wm. M. Brady, and as such passed to his legal representatives, and not to his wife who survived him.

4. That Wm. M. Brady's possession of said property, jointly with said Burton Dennard, after the latter became of age, was, in legal contemplation, a reduction into possession, as husband, of the undivided interest of which he was possessed.

5. That said bond never having been recorded, was void against *bona fide* creditors without notice, so far as it should be held to create a separate estate in the wife.

6. That if said bond created a separate estate, it was in that respect an agreement which stands on a similar footing with executory marriage articles, and will not be enforced to the prejudice of *bona fide* creditors without notice.

7. That if the jury believe that suits were pending against Wm. M. Brady when said compromise was made and said

bond was executed, and that he was then in embarrassed circumstances, he could only consent to or make such a settlement on his wife as a Court of Equity would have compelled him, on her application, to make, to-wit, a reasonable settlement; and if the jury believe, under the instructions of the Court, that said bond creates a separate estate in Mrs. Brady, and that it was made when he was being sued for debt and in embarrassed circumstances, then, the jury will determine whether the amount settled on her by said bond was such an amount as a Court of Equity would have required her husband to settle on her if she had applied for it; and if not, they will only enforce it for such an amount as they deem, under the facts of the case, would have been an adequate and reasonable settlement.

8. That if Wm. M. Brady procured an order to sell the undivided interest of Burton T. Dennard, deceased, in said negroes, and exposed it to sale, and at his request the negroes were bid in for the estate, this was a reduction of the said Dennard's negroes into his possession as husband; especially, if the jury believe that his wife was the only heir at law, and that Wm. M. Brady used the property of the said Dennard without making any return or accounting for the use of it in any way after Dennard's death.

The Court refused to charge any of said requests, but charged that the contrary thereof was the law.

The errors assigned are:

1. The refusal of the Court to continue the case.

2. The admission of the evidence relative to the erasure in the bond, and what was said by Collier and Dennard at the time.

3. The refusal to charge as requested, and charging to the contrary.

Lanier & Anderson, for the plaintiffs in error.

McCay and Hill, for defendants.

WALKER, J.

[1.] We think the Court did not err in overruling the motion to continue the case, on the ground of the absence of the party in the military service. The act of 1861, *Pamph. Acts. p.* 59, only " authorized " the Courts to continue for this cause. It was not *compulsory.* In this case, it does not appear that any harm was done the absent party ; it was not alleged that his presence was necessary to enable the attorney to represent his rights. The statement of the at-torney was that he *desired the presence* of his client. This is no legal reason for a continuance. In showings for Providential absence, the counsel must state, in his place, that he cannot go safely to trial without the presence of his client. *Code,* see 3453.

[2.] The bond of Burton T. Dennard to Wm. M. Brady, in trust for his wife, had been materially altered, and the testimony of Davis was certainly admissible to explain the alteration. *Code,* sec. 3758. If there was any ambiguity in it, either patent or latent, it was admissible to explain that also. Sec. 3724.

[3.] What rights did this bond give to Mrs. Brady, now Mrs. Wilcher ? We think it is an obligation, binding the obligor ‘to pay to the trustee, for her use, *an amount equal to* one-third of old Mr. Dennard's estate. It is not a *conveyance,* but an *obligation for* a conveyance, which a Court of Equity will enforce. We think the intention was, to create a separate estate for the sole use of Mrs. Brady. This is very evident from the testimony of Davis, which shows that Burton T. Dennard intended " to settle the property on " her ; and a Court of equity will carry into effect such intention. I am aware that some cases, decided by this Court, do not *seem* to harmonize very well with this view of the case, particularly *Denson vs. Patton,* 19 *Ga. R.* 577, and *Fears vs. Brooks,* 12 *Ga. R.* 195. These were cases where the conveyances had been *completed,* and all was done that was intended to be done ; while this was a mere *obligation* to con-

vey, and the conveyance, when made, might declare the trusts *according to the intention of the parties*, "to settle the property on Mrs. Brady." Besides, when this case was before this Court on a former occasion, (24 *Ga. R.* 135) Judge McDonald, delivering the opinion of the Court, says: "After the satisfaction of that judgment, (one in favor of Jerry Cowles,) Mrs. Brady has *the highest* claim under the agreement of compromise. That agreement was never *executed* by a division of the property, and a *conveyance* in trust for Mrs. Brady, and she has a *right to demand its execution* before the property can be appropriated to the payment of the debts of her deceased brother. By the agreement of compromise she is entitled to it *as coming from her father's estate*, as it was on condition that she should have an amount equal to one-third of her deceased father's estate, if she and her deceased husband would abandon their proceedings against the will, which was done." This may not be a *decision* of the case, yet, as an expression of opinion of one of our predecessors who was, perhaps, as familiar with the law in relation to trusts, marriage settlements, &c., as any one who ever sat on this bench, it is entitled to much weight. Again, in *Johnson vs. Hines*, 31 *Ga. Rep.* 728, Judge Jenkins, delivering the opinion, lays down the rule that conveyances to the wife directly, either by the husband or another, may be upheld in Equity; that the conveyance is a declaration of a trust and Equity will hold him and his representatives bound by it; especially when the property came through the wife, *with an understanding that it should be her separate property*. 'The true intent of the parties will be carried into effect in Equity without regard to form.' In accordance, with these views, the *Code* says, *section* 2288: "No words of separate use are necessary to create a trust estate for the wife. The appointment of a trustee, or any words sufficient to create a trust, shall operate to create a separate estate." We think, therefore, the bond created a right in the husband, not in his individual character, but as the trustee of his wife, which a Court of Equity will enforce for *her use* and benefit.

It is objected that the husband had no power to make the contract which he did with Burton T. Dennard. Could he not abandon the caveat if he chose to do so? We think so. It is true there was an agreement, that on his doing so and the will being established, his wife should, in effect, share equally with her brother and step mother, in the estate of her father. Was there any thing wrong in this? Upon the establishment of the will the whole property went to Mrs. Dennard and Burton; and by the course pursued by Brady and wife, an amount equal to one-third, was to be settled on her. How are the plaintiffs wronged by this arrangement? We are unable to see. The complaint must be that Brady did not *litigate and recover* the property for them. That he ought to have paid his debts is very true; but that he failed to place this fund, belonging to his wife, within the reach of his creditors is equally true.

[4] Again, it is insisted that this bond is void under the act of 1847, *Pamph. p.* 57, "To require marriage settlements to be recorded." That act contemplates a settlement made *by the husband*, and does not apply to a case like this. *See Code, Section* 1727.

Again, it is insisted that as Mrs. Brady was the sole heir at law, of Burton T. Dennard, deceased, and that as William M. Brady took possession of the estate of Burton T., that was such a reduction to possession, as would vest in him the title to the property left by Burton.

[5] The rule in such a case is, that "the husband must reduce the wife's property or choses in action to possession *as husband,* in order to defeat the wife's title by survivorship." 24 *Ga. R.* 136. Upon the death of Burton T. Dennard, Brady took out letters of administration on his estate, and administered the estate in part. We have looked through the record in vain to find any evidence that he held possession otherwise than *as administrator.* As such administrator he was entitled to the possession of the property, but such possession could not be called an *administration of it.* His title could become complete only after the payment of

the debts of Burton T. Dennard.    These debts were not paid during the lifetime of Wm. M. Brady.    *As administrator*, Brady procured an order of sale, and exposed the negroes to sale, and for some reason, perhaps  because they did not sell for as much as he thought they should, Wright Brady, *at his request*, " bid then in *for the estate.*"

[6] We think the facts  show that  his possession  was as *administrator* and not as *husband*.  This  being  the  case, upon  his death, the wife became entitled to receive, as  sole heir at law, the property of  her deceased brother.

Judgment affirmed.