## Parrott *et al. vs.* Edmondson.

1. The will of testatrix contained the following devise:
"I give and bequeath to my nephew, Sterling G. Barrow, and my niece, Mary Jane Barrow, wife of said Sterling G. Barrow, for and during their natural life, lot of land number 259, in the 13th district of Houston county, containing 202½ acres, with the right and privilege to sell the same if deemed proper by them to do so, and the proceeds thereof to invest in other lands or other property, and to use the same as before stated, and at their death the said lot of land, or the proceeds thereof, to be equally divided between the following children of the said Sterling G. and Mary Jane Barrow (naming them) and all others that may hereafter be born," etc. Sterling G. and Mary Jane were related in the same degree by blood to testatrix, were the principal and residuary legatees. Sterling G. was appointed executor on the 5th of May, 1856, and died 2d of December thereafter. Mary Jane survived until 19th of December, 1876. On the 31st of January, 1859, while survivor of her said husband, she conveyed for value

the one-half of said lot to her son James, and invested the proceeds in a negro man slave, with whose labor she cultivated the other half until 1865, and being possessed of but little other means, thus supported in good measure herself and the said children during that period. The children surviving her, being remaindermen under the will, brought suit at her death for the half lot sold by her (the proceeds having been invested as aforesaid by her) against the defendant who held under James and by virtue of title from Mary Jane Barrow, their mother, as survivor:

*Held* 1. Whether the wife, as survivor, could sell under the joint power, to herself and husband, depends upon whether she had an interest in the land—a power to two to sell, if coupled with an interest, survives to the survivor; if naked, it does not survive.

2. Under the law of England husband and wife took under this devise an entirety and not a severalty—not being under that law joint tenants, but each holding the entire estate as one person, and on the death of either, the survivor taking the whole.

3. If the statute of Georgia abolishing joint tenancy and converting that estate into tenancy in common and abolishing the survivorship in such an estate, be not applicable in reason and spirit to the law of the mother country in respect to the estate in entirety which husband and wife would take there, then the interest of the wife in the land is clear, because that law, unless repealed by our statute, is of force in this state; and the power being coupled with such interest, she, as survivor, could sell.

4. If this estate in entirety with survivorship in the case of husband and wife, was abolished by the statute before mentioned, still, at the death of testatrix, the wife, by our own repeated adjudications, had such an interest in property bequeathed to her during coverture that a court of equity would settle it upon her against the husband and his creditors, and free it from his control, by bill brought before he had reduced it to possession and his marital rights had attached; the power to sell is thus coupled with an equitable interest in the wife: and thus, in any view, this power to two to sell being coupled with an interest in each, survived to the wife.

5. So the title to this half lot passed from the surviving wife to her son James, thence by regular chain down to defendant, and the judgment of the superior court is right, and eminently equitable and just.

Wills. Estates. Husband and wife. Title. Before Judge SIMMONS. Houston Superior Court. May Term, 1879.

Reported in the head-notes and opinion.

DUNCAN & MILLER; S. HALL, for plaintiffs in error.

WARREN & GRICE; W. S. WALLACE, for defendant.

JACKSON, Justice.

This action was brought by plaintiffs in error as remaindermen, to recover a parcel of land sold by their mother while in life under a clause of a will which bequeathed the land to herself and husband, remainder to the plaintiffs, with joint power to sell. The defendant held under the mother, who sold after her husband's death, and the single question made is, did she, as survivor, have the right to sell so as to cut off the remainder?

The clause of the will is as follows: "I give and bequeath to my nephew, Sterling G. Barrow, and my niece, Mary Jane Barrow, wife of said Sterling G. Barrow, for and during their natural life, lot of land number 259, in the 13th district of Houston county, containing 202½ acres, with the right and privilege to sell the same, if deemed proper to do so, and the proceeds thereof to invest in other lands or other property and to use the same as before stated; and at their death the said lot of land, or the proceeds thereof, to be equally divided between the following children of the said Sterling G. and Mary Jane Barrow (naming them), and all others that may hereafter be .born," etc.

The rule is that where a power to sell is entrusted to two persons, the survivor may sell, if the survivor has an interest in the thing to be sold. A mere naked power will not survive. Especially is this the case, that the power survives, where they are executors or trustees and act in a fiduciary capacity, and may sell to execute the trust. 4 Kent, 326; 2 Bouvier, 343 *et seq.* Here, though one only was executor, yet both were trustees to sell and reinvest for their own and their children's use. 1 Vesey, Sr., 306; 3 *Ib.*, 11; 2 Johnson Chan., 1, 20; 2 Peere Wm's, 102; 1 Caine's

Cases 15; 3 Salk., 277; 3 Atk., 714; 14 Johnson, 553; 15 *Ib.*, 345; 10 Peters, 563.

The question therefore is, did Mrs. Barrow have an interest in this land? We think that she did. Under the English law she certainly would have had an interest therein, because she and her husband took an entirety and not a severalty in this land under the devise above cited; they would not have been joint tenants, but each would have held the entire estate as one person, and on the death of either the survivor took the whole. 2 Chitty's Blackstone, side page 182; 5 Tenn. R., 654; Litt., 291; 2. Cru. Dig., 511; 5 *Ib.*, 448.

But perhaps the statute of this state, which turned estates by joint tenancy into tenancy in common, may, by a liberal construction, as it abolished the doctrine of survivorship in such estates, be held also to extend to estates to husband and wife, and to abolish survivorship in such estates as this, and thus to alter the English law as to this wife's interest as survivor in all this land. It does not in terms do so, but its spirit probably does, and so it has been intimated in some of the opinions of this court.

Be that as it may, it is certain that this wife had such an interest in this land, or her moiety of it at least—and a moiety is all she sold and all that is involved here—as that equity would protect it and settle it upon her against her husband and his creditors. 1 Kelly, 639; 3 *Ib.*, 192, 546; 29 *Ga.*, 117.

If it all had been left to her, it would have been secured to her; if her husband and herself were both legatees, why would not equity, on like principle, secure her half?

If it be said that she did not by bill apply for it until the husband's marital rights had attached, it may be answered that the husband died in a few months after the testatrix, before such bill could well have been filed, and whether or not he had reduced the estate to possession does not appear. Even if he had entered thereon, man and wife were one, and the entry was joint. Nowhere, clearly, did he ever set

up exclusive title or take several possession. 35 *Ga.*, 184. Besides it is clear that this power is fiduciary. As stated before there is coupled with it a trust to reinvest for the use of the life tenants, and the remaindermen. In no view is it a mere *naked* power.

Besides this legal view of the case, looking at it strictly in dry legal right, equity, in the broader sense of right, demands that the verdict for the defendant should stand, unless the law imperatively demanded its overthrow. The half of the lot was sold and a negro bought to work the other half. On it the widow and children lived, and the labor of the slave, bought according to the spirit of the will, to work this land, supplied these plaintiffs in error with subsistence during the war, and now, after the expiration of more than eighteen years since the sale by the widow, the title of a purchaser for value is sought to be disturbed. It ought not to be done, and we are gratified that the law does not constrain us to do it.

The law does not so force us, neither in a strictly legal nor strictly equitable view on settled principles of established rules of equity in the books. The power to two to sell was coupled with an interest in each—equitable interest is enough. The general intent of the power is clear, and to that general intent any narrow, particular view must yield. And a trust to reinvest for the use of others in remainder as well as themselves for life, is clearly in the power, and they are trustees *quoad hoc*, and the mere name of executors is nothing—see 11 Johnson, 168 ; 16 *Ib.*, 166, and authorities above cited

Judgment affirmed.