43274.  SAMS, Executor v. McDONALD et al.

ARGUED JANUARY 3, 1968—DECIDED FEBRUARY 14, 1968—REHEARING DENIED FEBRUARY 28, 1968—CERT.

Sams & Sams, Augustine Sams, for appellant.

Weekes & Candler, John Wesley Weekes, Bonneau Ansley, for appellees.

EBERHARDT, Judge. ■ If this share account was one of joint tenancy, with right of survivorship, the correctness of the judgment seems to have been well settled. Code Ann. § 16-431; Sams v. McDonald, 223 Ga. 53 (153 SE2d 538) and citations; Nash v. Martin, 90 Ga. App. 235 (4) (82 SE2d 658). Although the application was for one in "the joint names of the undersigned as tenants by entireties," the intention is clear enough.

(a) An estate by the entirety is, at common law, one created by conveyance to a husband and wife jointly, the two holding as a unit title to the whole with the survivor taking to the exclusion of the heirs of the deceased. Chambers v. Chambers, 92 Tenn. 707 (23 SW 67); Oglesby v. Bingham, 69 Miss. 795 (13 S 852); Noblitt v. Beebe, 23 Ore. 4 (35 P 248). And see 26 AmJur 692, Husband & Wife, § 66, et seq. In Blackstone's Commentaries, Book II, Chapter XII, p. 581, where the subject of joint tenancies is discussed, it is asserted that "husband and wife, being considered as one person in law, they cannot take the estate by moieties, but both are seised of the entirety—per tout, et non per my." Thus the designation or nomenclature for this type of joint tenancy has largely lost its relevancy since, under our present laws, the husband and wife are no longer one person in law. It was held In Re Bramberry's Estate, 156 Pa. 628 (27 A 405, 22 LRA 594, 36 ASR 64) that where the land had been sold a purchase money obligation therefor which the husband and wife had taken on selling it, belonged to the survivor to the exclusion of the heirs of the deceased, or, in effect, that the obligation substituting for the land continued to be held

by the entirety.[1]  In Georgia, C. & N. R. Co. v. Scott, 38 S. C. 34 (16 SE 185) the Supreme Court of South Carolina, quoting from Chancellor Kent in 2 Kent, Comm. 132, asserted that "The same words of conveyance which would make two other persons joint tenants will make the husband and wife tenants of the entirety." A "tenancy by the entirety . . . is a species of joint tenancy." 31 CJS 39, Estates, § 18.  Conversely, it has been held that where the parties to a deed were disabled from holding property as tenants by the entirety, a joint tenancy is deemed to have been created unless a contrary intent is shown.  Coleman v. Jackson, 286 F2d 98 (83 ALR2d 1043); Cobb v. Gilmer, 365 F2d 931.

(b)  Here, Billups and Mrs. McDonald, not being husband and wife, could not hold as tenants by the entirety, but since that is but the nomenclature for a joint tenancy between husband and wife, and particularly since the application carried the additional language indicating that it was for a "membership of joint holders (with right of survivorship) of a share account," we must conclude that the legal effect was to create a joint tenancy in them, with right of survivorship.

"The properties of a joint estate are derived from its unity, which is fourfold: the unity of interest, the unity of title, the unity of time, and the unity of possession; or, in other words, joint-tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession. . . [and so] arises the grand incident of joint estates; viz., the doctrine of survivorship, by which when two or more persons are seised of a joint estate . . . or are jointly possessed of any chattel interest, the entire tenancy, upon the decease of any of them remains to the survivors, and at length to the. last survivor; and he shall be entitled to the whole estate, whatever it be . . ." Chitty, Blackstone's Commentaries, Book II, Chap-

---

[1]This is consistent with the provision of *Code* § 85-104 that "Any estate that can be created in [realty] may be created in [personalty], and the rules of construction as to both shall be the same."

ter XII, pp. 581, 584. "The principal distinguishing characteristic of estates in joint-tenancy is, that on the death of one the right in the estate survives to the other to the exclusion of the heirs and representatives of the deceased joint-tenant." 1 Cooley, Blackstone (4th Ed.) p. 581 (Book II, Chap. XII), ftn. 1.

(c) While survivorship is not generally favored in the law of this state (see *Code* § 85-1002), it is not prohibited; and when the contract provides for it in express terms or by necessary implication, it will be enforced. *Equitable Loan &c. Co. v. Waring*, 117 Ga. 599 (9) (44 SE 320, 62 LRA 93, 97 ASR 177); *Wilson v. Brown*, 221 Ga. 273 (2) (144 SE2d 332). But compare *Parrott v. Edmondson*, 64 Ga. 332, and see Agnor, Joint Tenancy in Georgia, 3 Ga. SBJ 29. The contract here meets that test.

Moreover, the General Assembly has specifically approved the "common law joint tenancy with right of survivorship," providing that this shall be the title created in accounts issued by State-chartered or federal savings and loan associations to two or more persons. Ga. L. 1937-38, Ex. Sess., pp. 307, 318; Ga. L. 1952, p. 305 (*Code Ann.* § 16-431).

Thus, upon his death all rights which Billups may have had in the account terminated, and it was wholly vested in Mrs. McDonald. Any change in the status of the account after that time was nugatory and could in no wise affect her rights.

A contrary result does not flow from the provision in the contract or application for the opening of the account that "the association is hereby authorized to act without further inquiry in accordance with writings bearing either signature; it being understood and agreed that either of the undersigned who shall first act shall have the power to act in all matters related to the membership . . . whether the other person named in the certificate be living or not. The repurchase and redemption value of any such share account or other rights relating thereto may be paid or delivered in whole or in part to either of the undersigned, who shall act first, and such payment of delivery of a receipt or acquittance signed by either of the undersigned shall be a valid and sufficient release and discharge of the association." This amounts to a power of attorney from each of

the tenants to the other for the purpose of dealing in the described manner with the association. It is but a paraphrase of *Code* § 13-2039, is *for the association's benefit*, and has no applicability to the title to the money as between the shareholders. *Clark v. Bridges,* 163 Ga. 542, 546 (136 SE 444); *Nash v. Martin,* 90 Ga. App. 235, supra.

■ In her cross bill Mrs. McDonald sought a declaratory judgment by which it would be adjudged that the funds in the joint account were, upon Mr. Billups' death, her property. The executor demurred to the portion of the cross bill seeking a declaratory judgment on the ground that all rights of the parties had accrued prior to the filing of this action. The demurrer was good, and should have been sustained. *Rowan v. Herring,* 214 Ga. 370, 374 (105 SE2d 29); *Pinkard v. Mendel,* 216 Ga. 487 (2) (117 SE2d 336); *Scott v. Employees' Retirement System of Ga.,* 113 Ga. App. 295 (147 SE2d 821).

■ However, this is not a reason for refusing the grant of a summary judgment. Indeed, if it appears that the rights have accrued and that there is no genuine issue of fact remaining, the grant of a summary judgment is proper.

While it is recited in the judgment itself that Mrs. McDonald moved for a declaratory judgment, and that upon a consideration of the pleadings and of the evidence submitted such a judgment was granted in her favor, it is obvious that what the court intended to grant and the effect of what it did grant was a summary judgment. It is the effect, not the characterization, of the judicial act that determines its nature as a judgment. *Robert Chuckrow Construction Co. v. Gough,* 117 Ga. App. 140 (1) (159 SE2d 469). We now move to a consideration of whether the grant of the summary judgment was proper.

A reading of the pleadings in the record, as well as the recitals in the opinion, reveals that the charges of fraud here, save the charge that Mrs. McDonald made certain representations to Billups for the purpose of obtaining his signature on the application to open the account with no intention at the time to fulfill them, were the same as the charges made in *Sams v. McDonald,* 223 Ga. 53 (153 SE2d 538), s.c. 223 Ga. 451 (156 SE2d 31), all of which were held, in that case, to be insufficient to have the contract declared null and void.

The executor alleges in his petition that "The account was deposited solely by Lanier R. Billups," and then by amendment alleges that "Mrs. Katie Houston McDonald, promised the plaintiff, Lanier R. Billups, to induce and procure his signature on said Exhibit A (the application for a membership share account) to defendant's answer, that she would use the account solely for his benefit in paying medical, hospital and doctors' bills due to his physical incapacity and sickness which continued until his death. That she was his cousin and occupied a confidential relationship, and he sincerely believed he would receive the benefits of her promise and the fulfillment of her promise in case of his disability. *That when and at the time of making the promise there was no intention on the part of the promisor to fulfill it,* but, on the contrary the promise was made with the intent not to fulfill it and was uttered as a scheme to defraud the plaintiff and his estate of the funds in said account." He also alleges that when Billups did become disabled Mrs. McDonald refused to use the money or any part thereof in accordance with the agreement made.

If there was incipient fraud practiced by Mrs. McDonald in getting Billups to open the joint account and to sign the contract therefor with the association, the contract was void as to her and there was no valid joint tenancy.

The fact that Mrs. McDonald was Billups' cousin does not give rise to a confidential relationship between them. *Stephens v. Walker,* 193 Ga. 330, 332 (18 SE2d 537); *Crawford v. Crawford,* 134 Ga. 114 (1) (67 SE 673, 28 LRA (NS) 353, 19 AC 932); *Watkins v. Mertz,* 83 Ga. App. 115, 120 (62 SE2d 744). Nor does the fact that plaintiff alleges that Billups would receive the benefits of her promise—that is to say, that he had reposed confidence and trust in her, create a confidential relationship. *Dover v. Burns,* 186 Ga. 19, 26 (196 SE 785).

It boils down, therefore, to the proposition that the only fraud alleged is that Mrs. McDonald procured Billups' signature to the application for opening the account upon the making of certain representations and promises which she did not, at the time, intend to fulfill.

It may be questioned whether these allegations of inceptive

fraud are not in direct conflict with the prior allegation that "the account was deposited solely by Lanier R. Billups, [and] that he was in possession of the bank book" until the time of his death. It is difficult to understand how, if Billups could thus open the account, there had been any occasion for Mrs. McDonald to procure his signature to the application for so doing. And since it is alleged that he kept possession of the passbook, which, though not essential under the contract terms, facilitates the making of withdrawals, there would seem to be a conflict with the allegation that Mrs. McDonald refused to make withdrawals for his benefit. But there were no demurrers pointing out these conflicts.

On the motion for summary judgment Mrs. McDonald relied wholly on the contract by which the account was opened. The executor introduced his own affidavit in which he asserted that he had found the passbook in Billups' home, along with other personal property, that he took it to the association and made demand that it transfer the account to him in his representative capacity, which was done, and that he had retained the newly issued passbook since that time. Billups had paid intangibles tax on the account, while Mrs. McDonald had not. Prior to his death Billups had been ill and under the care of Dr. R. B. Ansley, and one Ernest Moore stayed with him for a number of weeks before he went to DeKalb General Hospital where, after five days, he died. Mrs. McDonald had admitted to him that she had made no deposits into or withdrawals from the account. She did not pay any medical or hospital bills, but these were paid by him as executor from other funds.

Dr. Ansley testified that Mr. Billups had, during the latter years of his life, indulged in the use of alcoholic beverages to a considerable extent and contrary to his advice. At the time of his death he suffered from several circulatory ailments, heart trouble, pneumonia and pellagra, and that for a considerable period of time prior to his death Billups was aware of the fact that he could not attend to his business and banking matters *due to his physical condition.*

Nova Scott, who helped in nursing him prior to his death, testified that Billups had stated to her that he had signed the

application for the account and had placed Mrs. McDonald's name in it *due to his sickness and physical condition* so that she, in case of emergency, could withdraw the funds for payment of his medical and hospital expenses.

Oswald Billups and Agnes Billups testified that they went by the home of Mr. Billups August 1, 1965, and that while there they were told by him that *he was sick and he had placed the name of Mrs. McDonald on his bank account only so she could draw money out to pay bills when he could not do it for himself.* He was then sick and *physically incapable* of getting away from home to attend to business transactions.

While it was held in *Sams v. McDonald,* 223 Ga. 53, supra, that the allegations of fraud were insufficient to invalidate the contract, we deal here with the added allegation of inceptive fraud, as to which see *Coral Gables Corp. v. Hamilton,* 168 Ga. 182 (147 SE 494); *Bucher v. Christopher,* 211 Ga. 317, 319 (85 SE2d 760); *Sutton v. McMillan,* 213 Ga. 90, 95 (97 SE2d 139); *Cowart v. Gay,* 223 Ga. 635 (1) (157 SE2d 466). This additional allegation is sufficient to withstand demurrer, and, unless negated by evidence, raises a jury question. If there had been testimony from Mrs. McDonald negating the allegation and asserting that there had been no request upon her for the making of any withdrawals on behalf of Mr. Billups prior to his death, she would have pierced the allegations of the petition (*Scales v. Peevy,* 103 Ga. App. 42 (2, 3) (118 SE2d 193)), and demonstrated the existence of no genuine issue of fact so that the entering of summary judgment in her favor would have been proper, for the executor presented no evidence from which any conclusion could be drawn that she had made any promise or representation with no intent at the time to perform it. However, since the allegations were not pierced by the introduction of the contract alone, grant of the summary judgment was error. *Sanders v. Alpha Gamma Alumni Chapter,* 106 Ga. App. 137 (126 SE2d 545).

*Judgment reversed. Felton, C. J., and Whitman, J., concur.*