**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and RAY, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 6, 2013**

# In the Court of Appeals of Georgia

A12A2196. GEORGIA FARM BUREAUS MUTUAL JE-100
INSURANCE CO. v. FRANKS.

ELLINGTON, Chief Judge.

Thomas Franks filed this action in the Superior Court of Floyd County, seeking benefits under his homeowner's policy from Georgia Farm Bureau Mutual Insurance Company ("GFB"). The trial court denied the parties' cross-motions for summary judgment. Pursuant to a granted application for interlocutory review, GFB appeals, contending that the trial court erred in concluding that questions of material fact remain. For the reasons explained below, we affirm.

To prevail on a motion for summary judgment, "the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law[.]" (Citations and punctuation omitted.) *Cowart v.*

*Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).[1] In moving for summary judgment, "a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case." (Citation and punctuation omitted.) Id. The court must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant. Id. at 624 (1) (a). "Summary judgments enjoy no presumption of correctness on appeal[.]" (Citations and punctuation omitted.) Id. Rather, the appellate court is to determine whether there exists a genuine issue of material fact by conducting a de novo review of the evidence. *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

The record establishes the following undisputed facts. In August 2000, Franks purchased the subject property, 2877 Cedartown Highway, Rome. Prior to the closing on August 14, 2000, as required by the lender, Franks applied for homeowner's insurance with GFB. The application, and the policy GFB issued, listed Franks as the

---

[1] See OCGA § 9-11-56 (c) (Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

only insured. In addition, in the policy's "Conditions" section, it provided that, "[e]ven if more than one person has an insurable interest[2] in the property covered, [GFB] will not be liable in any one loss . . . [t]o the insured for more than the amount of the insured's interest at the time of loss[.]" After the closing, and on the same day, Franks executed a warranty deed, conveying the property to himself and to his domestic partner, Sterling Morrison, "as joint tenants with survivorship and not as tenants in common."[3]

---

[2] The term "insurable interest" is not defined in the policy.

[3] Deeds and other instruments of title, including any instrument in which one person conveys to himself and one or more other persons, any instrument in which two or more persons convey to themselves or to themselves and another or others, and wills, taking effect after January 1, 1977, may create a joint interest with survivorship in two or more persons. Any instrument of title in favor of two or more persons shall be construed to create interests in common without survivorship between or among the owners unless the instrument expressly refers to the takers as "joint tenants," "joint tenants and not as tenants in common," or "joint tenants with survivorship" or as taking "jointly with survivorship." Any instrument using one of the forms of expression referred to in the preceding sentence or language essentially the same as one of these forms of expression shall create a joint tenancy estate or interest that may be severed as to the interest of any owner by the recording of an instrument which results in his lifetime transfer of all or a part of his interest; provided, however, that, if all persons owning joint tenant interests in a property join in the same recorded lifetime

Franks renewed his policy with GFB annually. In the fall of 2002, Franks told GFB's agent, Todd Blankenship, that Morrison was on the deed as a co-owner and asked whether Morrison needed to be added to the homeowner's policy as an insured.[4] Blankenship told Franks that it was not necessary to name Morrison as an insured in the policy because only Franks was liable on the debt secured by the property, and Franks remained the sole named insured.

In part because of improvements Franks and Morrison made to the property over the next decade, including a large addition to the house, the policy's coverage for the "dwelling" was increased over time from $60,000 in 2000 to $246,000 for the period August 14, 2009, to August 10, 2010.[5]

During the night of July 15 to 16, 2010, the house was completely destroyed by fire. Franks filed a claim against his homeowner's policy. At that time, the

---

transfer, no severance shall occur.
OCGA § 44-6-190 (a).

[4] Although GFB questions the credibility of Franks' and Morrison's description of the conversation with Blankenship, GFB does not dispute that Blankenship was its agent and handled Franks' policy, and it points to no *evidence* to dispute Franks' contention that he disclosed to Blankenship Morrison's joint ownership of the insured property and inquired into adding Morrison as a named insured.

[5] This case is limited to the policy's coverage for the "dwelling," and does not concern personal property, other structures, or loss of use.

property was encumbered by two secured loans, totaling $104,175.65. GFB issued checks to discharge both of the loans. GFB informed Franks that, because the insured property was owned by Franks and Morrison as "a tenancy in common with the right of survivorship,"[6] Franks' "insurable interest in the property is calculated by taking the total amount of insurance coverage [for the dwelling], subtracting the amount owed to the mortgagee[s] as of the date of loss, and taking one-half (½) of the remaining balance." Based on this calculation, GFB issued a check to Franks for $70,912.18, one-half of the difference between the policy limits for the dwelling ($246,000) and the amount paid to discharge the secured debts ($104,175.65). In his action, Franks contends that he is entitled to the *entire* difference between the policy limits for the dwelling and the amount paid to discharge the secured debts, rather than a one-half share.

---

[6] We note that GFB initially misstated the nature of Franks' interest, which was that of a "*joint tenant*[ ] with survivorship and *not [a] tenant[ ] in common*." See OCGA §§ 44-6-120 ("Unless otherwise specifically provided by statute and unless the document or instrument provides otherwise, a tenancy in common is created wherever from any cause two or more persons are entitled to the simultaneous possession of any property."); 44-6-121 ("Every tenant in common shall have the right to possess the joint property."); § 44-6-140 et seq. (procedures for partition of tenancies in common). GFB now concedes that Franks' interest is that of a joint tenant with right of survivorship.

1. GFB contends that Franks' "one-half undivided interest in the [p]roperty as a joint tenant" with Morrison means that Franks' "interest in the [p]roperty is fifty percent." Further, GFB contends that under Georgia's Insurable Interest Statute, OCGA § 33-24-4, and other applicable law, an insured whose legal ownership interest in insured property is less than 100 percent has an insurable interest only to the same extent as the insured's fractional ownership interest. Consequently, GFB argues, Franks can recover no more than 50 percent of the policy limits less amounts paid to the secured lenders. In addition, GFB contends that, given the policy's explicit insurable interest condition, evidence that GFB had imputed knowledge of Morrison's co-ownership does not create a material question of fact regarding Franks' rights under the contract.

(a) Originally, "[t]he statutory requirement of insurable interest was intended to prevent wagering on human lives." (Citation and punctuation omitted.) *Wood v. New York Life Insurance Co.*, 255 Ga. 300, 303 (336 SE2d 806) (1985).[7] The concept was soon expanded to property insurance. See OCGA § 33-24-4 (b) ("No insurance

_____

[7] See OCGA § 33-24-3 (a) ("An insurable interest, with reference to personal insurance, is an interest based upon a reasonable expectation of pecuniary advantage through the continued life, health, or bodily safety of another person and consequent loss by reason of such person's death or disability or a substantial interest engendered by love and affection in the case of individuals closely related by blood or by law.").

contract on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having, at the time of the loss, an insurable interest in the things insured."). "Insurable interest is a keystone of the concept of insurance, safeguarding the insurer against the risk that arises if one who will receive the monetary benefit from loss of the insured property (or life, [in the case of life insurance,]) has no interest in the property not being destroyed." (Citation and punctuation omitted.) *Woods v. Independent Fire Insurance Co.*, 749 F2d 1493, 1496 (11th Cir., 1985). It is well settled that having title or an ownership interest is not the sole basis for having an insurable interest in property. *Brown v. Ohio Cas. Insurance Co.*, 239 Ga. App. 251, 253 (2) (519 SE2d 726) (1999). Rather,

> [t]he test of insurable interest in property is whether the insured has such a right, title, or interest therein, or relation thereto, that he will be [benefitted] by its preservation and continued existence, or suffer a direct pecuniary loss from its destruction or injury by the peril insured against.

(Citation and punctuation omitted). Id. Thus, Georgia law defines an "insurable interest" in property as "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." OCGA § 33-24-4 (a). Under OCGA § 33-24-4,

7

therefore, having title or legal ownership is not the sine qua non of having an insurable interest, so long as the insured has some lawful interest which "may be slight or contingent, legal or equitable." (Punctuation and footnote omitted.) *Conex Freight Systems v. Ga. Insurance Insolvency Pool,* 254 Ga. App. 92, 97 (1) (b) (561 SE2d 221) (2002) (An insured's leasehold was an insurable interest.).[8]

Although G.F. concedes that Franks had *an* insurable interest in the subject property, it contends that the *measure* of his ownership interest, being less than sole and undivided, limits his recovery to a fraction of the policy limits. See OCGA § 33-24-4 (c) ("The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment of such interest in such property.").[9] Although the Insurable Interest Statute requires that an insured have *an*

---

[8] See also *Brown v. Ohio Cas. Insurance Co.*, 239 Ga. App. 253-254 (2) (Despite relinquishing title to the insured property to his estranged wife, the husband remained liable under a mortgage assumption agreement and a security deed and, therefore, retained an insurable interest in the property.); *Whitaker v. Ranow*, 173 Ga. App. 746, 746-747 (327 SE2d 855) (1985) (An insured who was the guarantor of a commercial bank loan obtained by another to finance the purchase price of a truck had an insurable interest in the truck.); *E. C. Long, Inc. v. Brennan's of Atlanta*, 148 Ga. App. 796, 800 (1) (b) (252 SE2d 642) (1979) (A building contractor, who enters into a contract for construction, alteration, or repair of a building, has an insurable interest in the building.).

[9] "Damnify" means "[t]o cause loss or damage to; to injure[.]" Black's Law Dictionary (9th ed. 2009).

8

insurable interest, however, once such an insurable interest is shown to exist, it is the policy at issue, and not the statute, that determines the *amount* the insured is entitled to recover. *Amalgamated Transit Union Local 1324 v. Roberts*, 263 Ga. 405, 409 (2) (434 SE2d 450) (1993); *American Insurance Co. v. Bateman*, 125 Ga. App. 189, 193 (2) (186 SE2d 547) (1971). GFB contends, however, that as a matter of law the amount of Franks' interest was 50 percent of the value of the dwelling, less debt secured by the property.

Although one who owns property with another as joint tenants with right of survivorship is commonly (and confusingly) referred to as having a "one-half undivided interest,"[10] however, this is not in all ways the equivalent of each having a 50 percent ownership interest. See *Sams v. McDonald*, 117 Ga. App. 336, 340-341 (1) (b) (160 SE2d 594) (1968).

> The properties of a joint estate are derived from its unity, which is fourfold[:] the unity of interest, the unity of title, the unity of time, and the unity of possession; or, in other words, joint-tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same

---

[10] See, e.g., *Shaw v. Shaw*, 290 Ga. 354, 355 (1) (720 SE2d 614) (2012); *Bird v. Trapnell*, 149 Ga. 767, 769 (102 SE 131) (1920); see also *Wilson v. Brown*, 221 Ga. 273, 278 (3) (144 SE2d 332) (1965) ("undivided one-half interest").

undivided possession. . . . The principal distinguishing characteristic of estates in joint-tenancy is, that on the death of one the right in the estate survives to the other to the exclusion of the heirs and representatives of the deceased joint-tenant.

(Citations and punctuation omitted.) Id. Thus, although ownership is shared, the title and interest are not divided into fractional shares. Id. It follows that, although Morrison also had the same rights as Franks to use and possess the property, Franks' title and interest in the insured property was undivided, that is, 100 percent. Id. Consequently, GFB's argument that Franks had a 50 percent ownership interest in the property, and that such limits his recovery to a fraction of the policy limits, fails. *Allstate Insurance Co. v. Ammons*, 160 Ga. App. 257, 259 (1) (286 SE2d 765) (1981) ("*Ammons I*") (Where an insured conveyed "a one-half undivided interest" in a house to his ex-wife, the trial court correctly rejected the insurer's argument that the insured had a 50 percent ownership interest in the property and therefore had an "insurable interest" limited to 50 percent of the policy limits.); see also *Integon General Insurance Corp. v. Gibson*, 226 Ga. App. 152, 154 (1) (485 SE2d 576) (1997) (The insurable interest of one of two co-owners of an automobile, who under terms and conditions of note secured by the vehicle was jointly and severally liable for the entire

debt, was not limited to his one-half ownership; rather the insured's insurable interest equaled 100 percent of the vehicle's value.).

(b) Because, as noted earlier, once any insurable interest is shown to exist, as has been done in this case, it is the policy at issue, and not the Insurable Interest Statute, that determines the amount the insured is entitled to recover,[11] we turn now to the terms of Franks' homeowner's policy. The policy provided that, "[e]ven if more than one person has an insurable interest in the property covered, [GFB] will not be liable in any one loss . . . [t]o the insured for more than the amount of the insured's interest at the time of loss[.]" The term "the amount of the insured's interest" is not defined in the policy, but GFB equates "the amount of [Franks'] interest" with the supposed fractional nature of Franks' ownership interest. As explained in Division 1 (a), supra, however, Franks' ownership interest, though shared, is not fractional, but, rather, undivided; accordingly, GFB's construction cannot stand.[12] Because Franks is not, by virtue of his joint ownership of the insured property, limited to

---

[11] *Amalgamated Transit Union Local 1324 v. Roberts*, 263 Ga. at 409; *American Insurance Co. v. Bateman*, 125 Ga. App. at 193 (2).

[12] Whether a condition that expressly limits an insured's liability for any one loss to the available coverage, after payment of secured debts, divided by the total number of persons having an insurable interest would be enforceable is not presented by the case before this Court.

recovering one-half of the difference between the policy limits for the dwelling and the amount paid to discharge the secured debts ($246,000 minus $104,175.65 divided by 2, equaling $70,912.18), as GFB contends, the trial court did not err in denying GFB's motion for summary judgment.[13]

(c) We must take this opportunity to clarify certain cases relied upon by GFB for the formula it applies to insureds who are joint tenants. In *Ammons I*, cited earlier, we considered the issue of whether an insured had an insurable interest in his former marital residence in which, together with his ex-wife, he had "a one-half undivided interest." 160 Ga. App. at 257-258. The policy insured the house in the amount of $37,000. Id. Pursuant to the divorce decree, the house was to be sold for no less than $45,000, or as agreed by the parties, with the money from the sale to be allocated to payment of the outstanding mortgage, which was in the insured's name only, then to payment of taxes on the property, and then to payment of the expenses of sale, with the remainder divided equally between the insured and his ex-wife. Id. at 258. The house was destroyed by fire, and the insured filed a claim for the policy limits of $37,000. The insurer asserted that the insured "owned no more than a 50 [percent]

---

[13] In the absence of a cross-appeal, the issue of whether the trial court erred in denying Franks' cross-motion for summary judgment is not before this Court.

12

interest in the property at the time of loss[,]" that the insured's "insurable interest" was less than the insured's existing mortgage debt of $25,000, and that "this was the total amount owed by the [insurer] under the insurance policy." Id. The insured then moved for summary judgment on the grounds that he had an insurable interest in the property for the full policy amount of $37,000. Id. The trial court granted the insured's motion for summary judgment "only to the extent of ruling that he does have an insurable interest." Id. at 258-259. On appeal, this Court determined that, "as a result of the fire, the [insured] did suffer a pecuniary loss in excess of the sum owed on the mortgage. To that extent he ha[d] an insurable interest in the property[,] and the trial judge correctly so ruled." Id. at 259 (1). Thus, contrary to GFB's characterization of our holding in *Ammons I*, we did *not* hold that an insured with a one-half undivided interest in the insured property has a qualified "insurable interest" that serves to limit the insured's recovery under the policy; rather, as a matter of law the insured in that case had an insurable interest in the insured property and was not precluded from pursuing an amount up to the *full* policy limits. Id.

After remand of that case, a jury awarded the insured, inter alia, 100 percent of the difference between the maximum limits of the policy and the amount paid to the secured lender. See *Allstate Insurance Co. v. Ammons*, 163 Ga. App. 385, 386

13

(294 SE2d 610) (1982) ("*Ammons II*") (physical precedent only).[14] Upon appeal of the jury verdict, this Court held that the verdict improperly gave the named insured compensation for his ex-wife's right to use and possess the property. Id. at 386 (1). We held that the jury's award was "at least twice as much as [the insured] would have been entitled to under the formula set forth in [*Ammons I*]" and reversed. Id. at 386. In a case that soon followed *Ammons I* and *Ammons II*, this Court again considered the extent of an insured's allowable recovery after a fire destroyed his former marital residence, which he co-owned with his ex-wife pursuant to a divorce decree. See *Allstate Insurance Co. v. Thompson*, 164 Ga. App. 508 (297 SE2d 520) (1982) ("*Thompson*") ("[P]ursuant to the divorce decree, [the insured] conveyed to [his ex-wife] one-half of his interest in the house."). In that case, the insurer initially paid the insured $15,500, which was half of the policy limits of $31,000; out of that amount, the insured paid $11,000 to a secured lender. Id. The insured then brought suit for the balance of the policy amount, $15,500, and the jury returned a verdict in his favor. Id. On appeal, we characterized the insured's demand as being for compensation for his ex-wife's "one-half interest in the property." Id. at 509. We determined that *Ammons*

---

[14] When a panel judge concurs in the judgment only, a case serves as physical precedent only, which is not binding in subsequent cases. *Ghrist v. Fricks*, 219 Ga. App. 415, 420 (465 SE2d 501) (1995); Court of Appeals Rule 33 (a).

*I* and *Ammons II* set out the following "formula" in such cases of co-ownership: the insured is entitled to recover one-half of the difference of the policy limits less "expenses," in that case, the outstanding debt secured by the property. Id. at 510. Because under that formula the insured was entitled to recover $10,000 ($31,000 minus $11,000 divided by 2), but had netted only $4,500 after paying the outstanding debt himself, we calculated that he was entitled only to an additional $5,500 and reversed the jury's verdict for $15,500. Id.

On the issue of a co-owner insured's insurable interest, our decisions in *Ammons II* and *Thompson* misstate and misapply our holding in *Ammons I* and other applicable law, as explained above. In *Shield Insurance Co. v. Kemp*, 117 Ga. App. 538, 539-540 (2) (160 SE2d 915) (1968) ("*Kemp*"), we similarly held that an insured who owned a one-half undivided interest in the insured property, in that case, a service station, would be entitled under the policy to recover for only one-half of the insured loss. Our decisions in *Ammons II*, *Thompson*, and *Kemp* fail to set out sufficient detail regarding the conveyances or the terms of the policies at issue for this Court now to determine whether we erred in reversing the juries' verdicts in those cases. See Division 1 (b), supra. Accordingly, although we disapprove of the enunciations of the applicable "formula" in *Ammons II* and *Thompson*, and the

15

analysis in *Kemp*, to the extent with the foregoing, we need not overrule those decisions.

2. GFB contends that, given the policy's explicit insurable interest condition, evidence that GFB had imputed knowledge of Morrison's interest does not create a material question of fact regarding Franks' rights under the insurance contract. GFB has not shown, however, that it would be entitled to judgment if a finder of fact determined that GFB did not have actual or imputed knowledge of Morrison's interest. See Division 1 (a), (b), supra. Accordingly, this argument is moot.

3. G.F. contends that Franks' reliance on Georgia's Valued Policy Statute, OCGA § 33-32-5,[15] is misplaced. Generally, the gravamen of Valued Policy Statutes is that, in defined circumstances, the amount of a property insurance policy is

---

[15] OCGA § 33-32-5 provides, in pertinent part, that

[w]henever any policy of insurance is issued to a natural person or persons insuring a specifically described one or two family residential building or structure located in this state against loss by fire and the building or structure is wholly destroyed by fire without fraudulent or criminal fault on the part of the insured or one acting in his behalf, the amount of insurance set forth in the policy relative to the building or structure shall be taken conclusively to be the value of the property, except to the extent of any depreciation in value occurring between the date of the policy or its renewal and the loss, provided that, if loss occurs within 30 days of the original effective date of the policy, the insured shall be entitled to the actual loss sustained not exceeding the sum insured.

conclusive as to the value of the subject property and may not be contested after loss, either by the insured or by the insurer.[16] Franks contends that another effect of Georgia's Valued Policy Statute is that, when the conditions of the statute are met, the named insured(s) is (or are), despite any partial or qualified ownership interest, entitled to 100 percent of the insurance proceeds. This appears to be a matter of first impression in Georgia; Franks cites as persuasive authority decisions from other jurisdictions which have, in most cases, Valued Policy Statutes with much broader application.[17] Because GFB has not attempted to show that on the date of loss the

---

[16] See generally, Michael J. Skeary, "Valued Policy Laws: A Comparative Analysis," 44 Tort Trial & Insurance Law Journal 1067, Spring/Summer 2009; Laura Dietz, et al., "[Valued Policies] Generally; Total Loss, 44 Am. Jur. 2d Insurance § 1500 (November 2012); Laura Dietz, et al., "Allowance of Recovery in Full – Valued Policies," 44 Am. Jur. 2d Insurance § 1507 (November 2012); Francis C. Amendola, et al., "Agreed Valuation – Under Valued Policy Statutes," 46 C. J. S. Insurance, § 1574 (December 2012); Lee R. Russ, et al., "[Recovery Allowed in Full:] Valued Policies," 12 Couch on Insurance § 175:62 (December 2012); Lee R. Russ, et al., "[Valued Policies or Statutes] Generally; Purpose," 12 Couch on Insurance § 175:103 (December 2012); Christopher T. Conway, "As Hurricanes End, Legal Storms Begin: The Insurance Battle Under State Valued Policy Laws," 24 Ga. St. U. L. Rev. 1043 (Summer 2008).

[17] See, e.g., *Dewitt v. American Family Mut. Insurance Co.*, 667 SW2d 700, 707 (Mo. 1984); *Smith v. Nationwide Mut. Fire Insurance Co.*, 564 FSupp. 350, 351-352 (ND Fla. 1983); *Holden v. Hanover Fire Insurance Co.*, 128 FSupp. 527, 530 -531 (WD S. C. 1955); *Tedford v. Security State Fire Insurance Co.*, 278 SW2d 89, 91 (Ark. 1955); *Bd. of Trustees v. Cream City Mut. Insurance Co.*, 96 NW2d 690, 695 (3) (Minn. 1959); *Hight v. Maryland Insurance Co.*, 10 NW2d 285, 288 (S. D. 1943).

insured dwelling was worth less than the policy limits of $246,000, and because the trial court's denial of GFB's motion for summary judgment was correct for the reasons explained in Division 1, supra, this interesting question is not ripe for our review.

*Judgment affirmed. Phipps, P. J., concurs. Ray, J., concurs in judgment only.*